# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:  09-22738-CIV-MARTINEZ/BROWN

KATHLEEN HELTON  and DARRELL
HELTON, her husband,

     Plaintiffs,

v.

KERZNER INTERNATIONAL LIMITED,
a Bahamian company; KERZNER INTERNATIONAL
BAHAMAS LIMITED, a Bahamian company;
ISLAND HOTEL COMPANY LIMITED, a Bahamian
company; PARADISE ISLAND LIMITED, a Bahamian
company; and KERZNER INTERNATIONAL
RESORTS, INC., a Florida corporation,

     Defendants.

_____/

## AFFIDAVIT OF GISELLE PYFROM

     Personally appeared before the undersigned officer, duly authorized to administer oaths,

GISELLE PYFROM, who states under oath the following:

     1.     My name is Giselle Pyfrom.  I am over twenty-one years of age and competent to

testify to the statements set forth in this Affidavit.  I am a citizen of The Bahamas and maintain

my residence in Paradise Island, Bahamas.  I make this Affidavit based on my own personal

knowledge obtained through the course of my employment.  This Affidavit is submitted in

support of the Motion to Dismiss filed in the above-captioned lawsuit by Kerzner International

Limited, Kerzner International Bahamas Limited, Island Hotel Company Limited, Paradise

Island Limited and Kerzner International Resorts, Inc. (collectively, the "Kerzner Defendants").

     2.     I have reviewed Plaintiffs' Complaint in the above-captioned matter, and I am

familiar with the allegations and the claims asserted by the Plaintiffs.

3.     I am the Assistant Secretary of Kerzner International Limited ("KIL"), a Bahamian holding company that maintains its corporate headquarters and principal place of business in Paradise Island, Bahamas.  I am also General Counsel and Senior Vice President of Kerzner International Bahamas Limited ("KIBL"), a Bahamian company that maintains its corporate headquarters and principal place of business in Paradise Island, Bahamas.  KIBL is a wholly owned subsidiary of KIL.  Neither KIL nor KIBL have offices in Florida and neither directly own, operate or manage the Atlantis Hotel & Casino (the "Atlantis") or are otherwise responsible for the ownership, control, supervision, maintenance, upkeep and safety of the Atlantis.  KIBL has subsidiaries that own and operate the Atlantis that are Bahamian corporations with their principal place of business in The Bahamas.  KIL and KIBL would be amenable to service of process in The Bahamas.

4.     Kerzner International Resorts, Inc. ("KIRI") is a Florida corporation with its principal place of business in Plantation, Florida. KIRI is a separate and distinct corporate entity from KIL and/or KIBL.  KIRI provides marketing, tour operations and administrative serves to the Atlantis.  While KIRI provides services to the Atlantis, KIRI is neither the owner and/or operator of the Atlantis nor is KIRI otherwise responsible for matters including, but not limited to, the ownership, control, supervision, maintenance, upkeep and safety of the premises of the Atlantis.  KIRI neither owned or operated the Atlantis on the date at issue or at any time subsequent nor did it or does it have any involvement with any maintenance or operational activities at the Atlantis.

5.     Island Hotel Company Limited ("IHC") and Paradise Island Limited ("PIL") are wholly owned subsidiaries of KIBL.  Specifically, IHC operates the Atlantis.  IHC and PIL are Bahamian corporations with their headquarters and principal place of business in Paradise Island,

The Bahamas, with no offices outside of The Bahamas. IHC and PIL would be amenable to service of process in The Bahamas.

6.      Plaintiffs arrived at the Atlantis on September 20, 2006.  Plaintiff Kathleen Helton alleges that on September 24, 2006, she was walking on a plastic grate at the Royal Bath Pool deck and was injured when the grate broke.

7.      A great majority of the witnesses relevant to Mrs. Helton's alleged injury and claims are located in The Bahamas.  These witnesses include: Investigator Jacob Shaw took Mrs. Helton's statement after the alleged accident and investigated it and another incident Mrs. Helton alleges occurred in the same general area; Nurse Morley who assisted Mrs. Helton immediately following the alleged accident; Sterling Cleare, Duty Manager at the Royal Towers, Francis Hanna- Chong, Manager at the Royal Towers; Raymond Bethel, Duty Manager at the Royal Towers; Een Colebrooke in the Risk Management Department; and Duquesa Dean, Quality Assurance Manager who communicated with the Heltons after the alleged accident.  Witnesses also include hotel employees involved in the maintenance of the area of the alleged incident, and corporate representatives and employees working for those companies that own and operate the Atlantis.  All of these witnesses are citizens of and reside in The Bahamas.

8.      Additionally, all of the documentation related to Plaintiffs' allegations, to the extent they involve the site of the alleged incident or the management, operation, control, and maintenance of the site of the alleged incident, is located in The Bahamas.

9.      In addition, the Kerzner Defendants have identified other individuals, who are located in Alaska, as witnesses relevant to Mrs. Helton's alleged injury, including doctors who treated Mrs. Helton and witnesses relating to her damages claim.

10.     The Bahamian legal system is patterned after the English system.  It allows access

to evidence, access to relevant sites, and access to witnesses. The Bahamian legal system also recognizes actions based on common law negligence, damages in personal injury claims for loss of consortium and supports enforcement of judgments. Litigation in The Bahamas is neither less practical nor more expensive than litigation in Florida.

11.     Tourism is the single largest industry in The Bahamas and the Atlantis is The Bahamas' largest hotel and single largest private employer.

12.     Since before the time of the alleged incident and continuing through today, the regular business custom and practice of the Atlantis, is to require all guests, including the Plaintiffs, to sign a guest folio which includes a choice-of-law and venue selection agreement, which explicitly provides that "…any events occurring in The Bahamas **shall** be governed by and construed in accordance with the laws of The Commonwealth of The Bahamas and further, irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceedings whatsoever." (Emphasis added.)

13.     Consistent with the Atlantis' regular business custom and practice, Mr. and Mrs. Helton signed a guest registration card containing a mandatory forum selection clause requiring that disputes between the Plaintiffs and the Atlantis and its affiliates be litigated exclusively in The Bahamas upon their arrival at the Atlantis. The Kerzner Defendants are identified as "Resort Parties" in the guest registration card. A copy of the guest registration card signed by the Plaintiffs is attached hereto as Exhibit "1."

FURTHER AFFIANT SAYETH NOT.

_____
GISELLE PYFROM

COUNTY OF BROWARD )
)SS
STATE OF FLORIDA )

The foregoing instrument was sworn to and subscribed before me this 12th day of November, 2009, by Giselle Pyfrom, who is:

☒ personally known to me; or

☐ produced a driver's license issued by the _____ Department of Highway Safety and Motor Vehicles as identification; or

☐ produced the following identification: _____

_____
NOTARY PUBLIC, STATE OF FLORIDA

_____
(Print, Type or Stamp Commissioned Name of Notary Public)



# EXHIBIT "1"

**ATLANTIS**
P A R A D I S E   I S L A N D

FIRST NAME
**DARRELL**

LAST NAME
**HELTON**

ADDRESS LINE 1
**4711 BUSINESS PK BLVD, SUITE 10**

ADDRESS LINE 2

ROOM#   RT   3504
ARRIVAL   9/20/06
DEPARTURE   9/26/06

CITY
**ANCHORAGE**

COUNTRY

STATE
**AK**

ADULTS/
CHILDREN   2

GROUP   GDOBSS6

ZIP OR POSTAL CODE
**99503**

TEL. AREA CODE   TEL. NUMBER
**907/229-0000**

ACCOUNT
NUMBER   38950140499

E-MAIL ADDRESS

| DATE | REFERENCE | DESCRIPTION | AMOUNT |
|------|-----------|-------------|--------|



P.O. BOX N-4777   NASSAU, BAHAMAS   TELEPHONE: 242-363-3000   FACSIMILE: 242-363-3524

## ACKNOWLEDGEMENT, AGREEMENT AND RELEASE – READ BEFORE SIGNING

**I UNDERSTAND, AND AGREE THAT ANY MOTORIZED WATERSPORT ACTIVITIES ("THE ACTIVITIES") ARE OFFERED BY VENDORS WHO ARE INDEPENDENT OF, AND NOT AFFILIATED WITH THE ATLANTIS RESORT & CASINO, HARBORSIDE RESORT OR ONE&ONLY OCEAN CLUB ("RESORT").**

I agree, on behalf of myself and the members of my family group or others listed below, to assume all risks incidental to participation in the Activities (which risks may include, among other things, muscle injuries and broken bones, drowning, sea sickness, sea creature attack, or death) and, on my own behalf and the members of my family group or others listed below and on behalf of my and their heirs, executors and administrators, to release and forever discharge the "Resort Parties" (defined below), of and from all liabilities, claims, actions, damages, costs or expenses, of any nature arising out of or in anyway connected with my participation in the Activities, and further agree to indemnify and hold each of the Resort Parties harmless against any and all such liabilities, claims, actions, damages, costs or expenses, including, but not limited to, all attorney's fees and disbursements.

I further understand that this release and indemnity agreement includes any claims based on the negligence, action or inaction of any of the Resort Parties and covers bodily injury (including death) and property damage, whether suffered by me, before, during or after such participation. I further authorize medical treatment for myself and family members or others, at my cost, if the need arises.

I agree that any claims I may have against the Resort Parties resulting from any events occurring in The Bahamas shall be governed by and construed in accordance with the laws of the Commonwealth of The Bahamas, and further, irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceedings whatsoever.

I represent and warrant that I have authority to sign this document on behalf of myself and my family and/or any other persons who accompany me, and that all of such persons are listed below. My signature below acknowledges that I have read and understood the foregoing and knowingly and voluntarily agree to all the terms of this release.

**The Resort Parties** are Kerzner International Limited, Kerzner International Bahamas Limited, Paradise Island Limited, Paradise Enterprises Limited, Island Hotel Company Limited and Paradise Beach Inn Limited, Harborside at Atlantis Development Limited and Harborside at Atlantis Management Limited, along with their parent, related and affiliated companies at every tier, and the officers, directors, employees, agents, representatives, successors and assigns of each of the foregoing entities.

**I AGREE THAT MY LIABILITY FOR THIS BILL IS NOT WAIVED AND I AGREE TO BE HELD PERSONALLY LIABLE IN THE EVENT THAT THE INDICATED PERSON, COMPANY, ASSOCIATION FAILS TO PAY FOR THE FULL AMOUNT OF THE ACCOUNT CHARGES PAYABLE ON PRESENTATION OR DEPARTURE. I AGREE THAT THE HOTEL WILL NOT BE HELD RESPONSIBLE FOR GOODS OR VALUABLES LEFT IN MY ROOM. ROOMS ARE EQUIPPED WITH IN ROOM SAFES. SAFE DEPOSIT BOXES ARE ALSO AVAILABLE.**

"The Miami Herald will be delivered to your room (Monday — Saturday) during your stay. Should you not want delivery, a credit of $0.25 daily will be refunded."

I WILL DEPART ON _Tus. 9-26_   MY FLIGHT DEPARTS AT _Tues 9-26   9:15AM_

NUMBER OF ADULTS _____   NUMBER OF CHILDREN UNDER 12 YEARS OF AGE STAYING IN ONE ROOM _____

PRINT NAME _Darrell Helton_   SIGNATURE X _Darrell Helton_   DATE _9-20-06_

PRINT NAMES OF FAMILY MEMBERS OR OTHERS IN MY GROUP _____

ADDITIONAL GUEST _Kathleen V. Helton_   SIGNATURE X _____   DATE _____

ADDITIONAL GUEST _____   SIGNATURE X _____   DATE _____

# EXHIBIT "B"

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
                                    FILED
                              U.S. COURT OF APPEALS
                                ELEVENTH CIRCUIT
                                AUGUST 19, 2009
                                THOMAS K. KAHN
                                    CLERK
```

No. 08-15971

D. C. Docket No. 08-22032-CV-KMM

DEBBI KRENKEL,
GEORGE KRENKEL,

Plaintiffs-Appellants,

versus

KERZNER INTERNATIONAL HOTELS LIMITED,
a Bahamian company,
KERZNER INTERNATIONAL BAHAMAS LIMITED,
a Bahamian company,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

(August 19, 2009)

Before EDMONDSON, BLACK and SILER,* Circuit Judges.

PER CURIAM:

_____

* Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting
by designation.

This case arises from Debbie Krenkel's slip and fall at the Atlantis Hotel in The Bahamas.[1] She and her husband George appeal the district court's dismissal of their claims, based on a forum-selection clause the Krenkels signed upon check-in at the hotel. For the following reasons, we affirm the dismissal.

## I.

In May 2007, the Krenkels traveled from New Jersey, where they reside, to The Bahamas. Upon check-in at the Atlantis, the Krenkels executed an agreement containing a forum-selection clause. The clause read:

> I agree that any claims I may have against the Resort Parties resulting from any events occurring in The Bahamas shall be governed by and constructed in accordance with the laws of the Commonwealth of The Bahamas, and further, irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceedings whatsoever.

On May 16, 2007, Mrs. Krenkel was injured when she slipped and fell on an outdoor path in the pool lagoon area. Thereafter, the Krenkels brought suit against

---

[1] The Southern District of Florida has seen many cases concerning accidents occurring at the Atlantis or its affiliates in The Bahamas. *See, e.g., Larsen v. Kerzner Int'l Hotels Ltd.*, No. 08-22031, 2009 WL 1759585 (S.D. Fla. June 19, 2009); *Miyoung Son v. Kerzner Int'l Resorts, Inc.*, No. 07-61171, 2008 WL 4186979 (S.D. Fla. Sept. 5, 2008); *Horberg v. Kerzner Int'l Hotels Ltd.*, No. 07-20250, 2007 U.S. Dist. LEXIS 97693 (S.D. Fla. Aug. 6, 2007); *Morrone v. Sun Int'l Hotels, Ltd.*, No. 05-61600 (S.D. Fla. Sept. 25, 2005); *Ward v. Kerzner Int'l Hotels Ltd.*, No. 03-23087, 2005 WL 2456191 (S.D. Fla. Mar. 30, 2005); *Foster v. Sun Int'l Hotels, Ltd.*, No. 01-01290 (S.D. Fla. Feb. 4, 2002), *aff'd*, 54 Fed. Appx. 691 (11th Cir. 2002); *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246 (S.D. Fla. 2001); *Morse v. Sun Int'l Bahamas, Ltd.*, No. 98-07451 (S.D. Fla. Feb. 26, 2000), *aff'd*, 277 F.3d 1379 (11th Cir. 2001); *Doe v. Sun Int'l Hotels, Ltd.*, 20 F. Supp. 2d 1328 (S.D. Fla. 1998).

2

Kerzner International Hotels Limited and Kerzner International Bahamas Limited (Kerzner Defendants), the entities that own and operate the Atlantis on Paradise Island in The Bahamas. Subsequently, the district court granted the Kerzner Defendants' motion to dismiss on the basis of the forum-selection clause, declining to address their alternative motion for dismissal based on *forum non conveniens*.

## II.

We review *de novo* the enforceability of forum-selection and choice-of-law provisions in international agreements. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290-91 (11th Cir. 1998). Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a "strong showing" that enforcement would be unfair or unreasonable under the circumstances. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95, 111 S. Ct. 1522, 1527-28 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 1913 (1972). A forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy. *Lipcon*, 148 F.3d at 1296 (citing *Shute*, 499 U.S. at 594-

3

95, 111 S. Ct. at 1528). In determining whether there was fraud or overreaching in a non-negotiated forum-selection clause, we look to whether the clause was reasonably communicated to the consumer. A useful two-part test of "reasonable communicativeness" takes into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms.[2]

The forum-selection clause the Krenkels signed was not hidden or ambiguous. Rather, it was on a one-page form entitled "Acknowledgment, Agreement and Release" that contained only eight paragraphs, was set apart in a separate paragraph, was in legible type in the same font and type size as the surrounding paragraphs, and began with the words "I agree." The language of the clause was plain and sufficiently gave the Krenkels notice they were agreeing to litigate any disputes that might arise from their visit in The Bahamas. Moreover, the agreement notified the Krenkels in bold, capitalized letters to **"READ BEFORE SIGNING."** Had the Krenkels adhered to this notice, their assumption the agreement pertained only to water sports activities would have been disproved,

---

[2] This approach has been taken by many of our sister circuits. *See, e.g., Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 835-37 (9th Cir. 2002); *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523-24 (2d Cir. 2001); *Dillon v. Admiral Cruises, Inc.*, 960 F.2d 743, 744-45 (8th Cir. 1992); *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 863-66 (1st Cir. 1983).

4

as other paragraphs of the agreement addressed such topics as newspaper delivery and liability for the hotel bill. *See Nash v. Kloster Cruise A/S*, 901 F.2d 1565, 1567 (11th Cir. 1990) (holding a similar warning—"read the terms and conditions"—provided reasonable notice).

The Krenkels contend their ability to become meaningfully informed of and have the opportunity to reject the terms of the forum-selection clause was impeded because the front desk personnel confirmed their assumption that the agreement pertained only to water sports activities.[3] We find their argument unpersuasive. In August 2004, the Krenkels visited the Atlantis and signed a form containing a nearly identical forum-selection clause. They should not have been surprised, then, that they would be asked in May 2007 to consent to The Bahamas as the forum for any disputes arising from their visit. The Krenkels' first visit gave them a reasonable opportunity to consider and reject the forum-selection clause at issue. The forum-selection clause was reasonably communicated to the Krenkels, so we conclude it was not signed as a result of fraud or overreaching.[4]

---

[3] To the extent the Krenkels argue this alleged misrepresentation should equitably estop the Kerzner Defendants from invoking the forum-selection clause or should lead to an equitable reformation of the provision, we decline to address these arguments because they were not made before the district court. *See Walton v. Johnson & Johnson Serv., Inc.*, 347 F.3d 1272, 1292 (11th Cir. 2003) (finding arguments not argued before the district court are waived on appeal).

[4] The Krenkels also have not demonstrated inconvenience or unfairness, that the chosen law would deprive them of a remedy, or that enforcement of the forum-selection clause would

III.

The Krenkels have not made a sufficient showing to overcome the presumptively valid and enforceable forum-selection clause they signed upon check-in at the Atlantis.  Accordingly, we affirm the district court's dismissal of the Krenkels' suit.

**AFFIRMED.**

---

contravene public policy.  *See Lipcon*, 148 F.3d at 1296.

# EXHIBIT "C"

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-22302-CIV-MOORE/SIMONTON

DEBBIE KRENKEL and GEORGE
KRENKEL, her husband,

      Plaintiffs,

vs.

KERZNER INTERNATIONAL HOTELS
LIMITED, a Bahamian company; and KERZNER
INTERNATIONAL BAHAMAS LIMITED, a
Bahamian company,

      Defendants.

_____/

*CLOSED CIVIL CASE*

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss Plaintiffs'

Complaint (dkt # 8).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the

record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I.    BACKGROUND

In May of 2007, Plaintiffs Debbie and George Krenkel traveled from New Jersey, where they

reside, to the Bahamas. Upon checking in to the Atlantis Hotel, Plaintiffs executed a registration

card that included an agreement containing a forum-selection clause. On May 16, 2007, Debbie

Krenkel ("Mrs. Krenkel") slipped and fell on an outdoor path in the pool lagoon area. The fall

caused injuries to her toes, ankle, foot, neck, spine and coccyx. On July 17, 2008, Krenkel filed a

Complaint (dkt # 1) against Defendants seeking damages for her injuries. Her husband, George

Krenkel ("Mr. Krenkel"), also brought a claim against Defendants for loss of consortium.

Defendants now move to dismiss the Complaint based on improper venue and on the doctrine of *forum non conveniens*.

## II.    STANDARD OF REVIEW

A motion to dismiss based on the applicability of a forum-selection clause is construed as a motion for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. Lipcorn v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998). Forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (quotation marks omitted). Forum-selection clauses are only unreasonable when: "(1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy." Lipcorn, 148 F.3d at 1292; *see* Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594-95 (1991).

In conducting an analysis for improper venue, a court may consider evidence outside of the pleadings and make any necessary findings of fact as long as these findings are not an adjudication on the merits of the case. Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008). A plaintiff always has the burden of showing that venue is proper when a motion to dismiss for improper venue is based on a forum-selection clause. Lobo v. Celebrity Cruises, Inc., 426 F. Supp.2d 1296, 1304 (S.D.Fla. 2006).

2

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 20 of
119
Case 1:08-cv-22032-KMM   Document 19   Entered on FLSD Docket 09/19/2008   Page 3 of 7

### III.    ANALYSIS

<u>A. Venue</u>

Defendants contend that venue is improper here because Plaintiffs are bound by a forum-

selection clause requiring Plaintiffs to litigate all claims against Defendants in the Bahamas.

Plaintiffs do not dispute the existence of the forum-selection clause nor the authenticity of the

document containing the forum-selection clause. *See* Def.'s Mot. to Dismiss, Ex. A-1 (dkt # 8); Pl.'s

Resp. to Def.'s Mot. to Dismiss, at 9-11 (dkt # 13).  Rather, Plaintiffs seek to conduct additional

discovery to ascertain "whether the forum-selection clause is binding and enforceable as to them."

<u>Id.</u>, at 5.

  1. Fraud and Overreaching

      a. Physical Characteristics of the Contract

Plaintiffs contend that Defendants induced Plaintiffs to enter into the agreement containing

the forum-selection clause by fraud and overreaching.  Pl.'s Resp. to Def.'s Mot. to Dismiss, at 9-11

(dkt # 13).  Specifically, Plaintiffs allege that the forum-selection clause is hidden within the

agreement and not physically conspicuous and that the agreement is confusing because it leads the

reader to believe that it only applies to watersports activities.

The agreement containing the forum-selection clause is titled "ACKNOWLEDGMENT,

AGREEMENT AND RELEASE - READ BEFORE SIGNING" (the "Agreement").  Def.'s Mot. to

Dismiss, Ex. A-1 (dkt # 8).  The next sentence states "I UNDERSTAND, AND AGREE THAT

ANY MOTORIZED WATERSPORT ACTIVITIES ("THE ACTIVITIES") ARE OFFERED BY

VENDORS WHO ARE INDEPENDENT OF, AND NOT AFFILIATED WITH THE ATLANTIS

RESORT & CASINO, HARBORSIDE RESORT OR OCEAN CLUB ("RESORT")."  <u>Id.</u>  The third

3

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 21 of
119
Case 1:08-cv-22032-KMM   Document 19   Entered on FLSD Docket 09/19/2008   Page 4 of 7

paragraph of the Agreement states:

> I agree that any claims I may have against the Resort Parties resulting from any events occurring in The Bahamas shall be governed by and construed in accordance with the laws of the Commonwealth of The Bahamas, and further, irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceeding whatsoever.

Id. The Agreement demonstrates that the forum-selection clause was not hidden. The document was captioned "READ BEFORE SIGNING." Id. Although the Agreement covered a number of different topics, it was only one page, thereby permitting a patron to read it in its entirety during the check-in process. Even if Plaintiffs did not read the Agreement, Plaintiffs would not be excused from their contractual obligation. Nor is the language of the forum-selection clause ambiguous. It states, in clear and plain terms, that any claims against Defendants will be governed by the laws of the Bahamas and that claims against Defendants must be litigated in the Bahamas. Nothing about the Agreement indicates that Plaintiffs were induced to sign it by fraud or overreaching. Nor have Plaintiffs alleged any circumstances concerning the check-in process or any other events related to their signing of the Agreement that indicate that Plaintiffs were induced to sign the agreement through fraud or overreaching.

> b. Ability to Become Reasonably Informed of the Forum-Selection Clause and to Reject its Contractual Terms

Plaintiffs argue that they lacked the ability to reject the forum-selection clause because it was never presented to them until they checked into the hotel. "A forum-selection clause is not fundamentally fair if it is shown that the resisting party was not free to reject it with impunity. Sun Trust Bank v. Sun Int'l Hotels Limited, 184 F. Supp.2d 1246, 1261 (S.D.Fla. 2001) (stating that forum-selection clause was unfair and unenforceable when presented for the first time upon arrival in the Bahamas); Corna v. American Hawaii Cruises, Inc., 794 F. Supp.2d 1005, 1008 (D. Hawai'i

4

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 22 of
119
Case 1:08-cv-22032-KMM   Document 19   Entered on FLSD Docket 09/19/2008   Page 5 of 7

1992) (forum-selection clause was unfair and unenforceable where plaintiffs received tickets 2-3

days in advance and ticket stated that cancellation would result in forfeiture, despite defendant's

assertion that it would have refunded the entire purchase price); *see also* <u>Carnival Cruise Lines, Inc.</u>

<u>v. Shute</u>, 499 U.S. 585, 594-95 (1991) (finding no defect with notice provided of forum-selection

clause where the resisting party "retained the option of rejecting the contract with impunity").

      Here, Mrs. Krenkel states that "[a]t no time from the time that our trip was planned, until the

moment we arrived to check in at the hotel, was I presented with the "Acknowledgment, Agreement

and Release" attached to Defendants' Motion to Dismiss." Aff. of Debbie Krenkel, ¶ 7, sworn to

August 28, 2008 (dkt # 13-2). However, according to Giselle Pyfrom ("Pyfrom"), Assistant

Secretary of Kerzner International Limited and General Counsel and Senior Vice President of

Kerzner International Bahamas Limited, Plaintiffs were guests at the Atlantis Hotel in August of

2004. Aff. of Giselle Pyfrom, ¶¶ 3, 10, sworn to August 8, 2008 (dkt # 13-2). Pyfrom further states

that consistent with regular business custom and practice at the time, Plaintiffs previously signed

guest registration cards containing the hotel's mandatory forum selection clause." <u>Id.</u>, at ¶¶ 9-11.

      In this case, Plaintiffs' prior stay at the Atlantis Hotel put them reasonably on notice that they

would again be presented with the forum-selection clause upon checking in. *See* <u>MiYoung Son v.</u>

<u>Kerzner Int'l Resorts, Inc.</u>, 07-61171 (KAM), 2008 WL 4186979, at *4 (S.D.Fla. 2008)

(distinguishing the holding in <u>Sun Trust Bank</u> on grounds that plaintiff's prior visit to the hotel seven

years earlier raised a reasonable expectation that plaintiff would be asked to sign a similar agreement

upon his return visit); <u>Horberg v. Kerzner Int'l Hotels Limited, Inc.</u>, 07-20250 (UU), *5 (S.D.Fla.

2007 Aug. 6, 2007) (distinguishing the holding in <u>Sun Trust Bank</u> on grounds that plaintiff's visits to

the hotel on four prior occasions raised a reasonable expectation that plaintiff would be asked to sign

a similar agreement upon his return visit). Given Plaintiffs' prior knowledge of the forum-selection clause, Plaintiffs could have rejected the clause with impunity by choosing not to stay as guests at the Atlantis Hotel in the first instance, or by calling in advance to reject the Agreement containing the forum-selection clause in order to determine if the hotel would allow them to stay as guests despite their unwillingness to accept the Agreement. Therefore, Plaintiffs are bound by the forum-selection clause.

2. Inconvenience and Unfairness

Plaintiffs also contend that the location of the majority of its witnesses in the United States renders the forum-selection clause unenforceable. "[W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the clause unenforceable." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17 (1972). The party resisting the application of a forum-selection clause based on inconvenience bears a heavy burden of proof. Id. This Court's finding that Plaintiffs were not induced to enter the Agreement containing the forum-selection clause by fraud or overreaching compels the conclusion that the Agreement was freely negotiated. Accordingly, the inconvenience that would result if Plaintiffs' witnesses were required to travel to the Bahamas is insufficient to release Plaintiffs from being bound by the forum selection clause.

Likewise, the unavailability of contingency agreements in the Bahamas is also insufficient to give rise to the unfairness necessary to release Plaintiffs from the forum-selection clause. MiYoung Son v. Kerzner Int'l Resorts, Inc., 07-61171 (KAM), 2008 WL 4186979, at *6 (S.D.Fla. 2008); Horberg v. Kerzner Int'l Hotels Limited, Inc., 07-20250 (UU), *16 (S.D.Fla. Aug. 6, 2007). "If the

6

lack of a contingent-fee system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most foreign forums." Coakes v. Arabian American Oil Co., 831 F.2d 576 (5th Cir. 1987).

### B.  *Forum Non Conveniens*

Defendants argue that this case should be dismissed based on the doctrine of *forum non conveniens*. "The doctrine of *forum non conveniens* authorizes a trial court to decline to exercise its jurisdiction, even though the court has venue, where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum." Sibaja v. Dow Chemical Co., 757 F.2d 1215, 1218 (11th Cir. 1985). Here, no *forum non conveniens* analysis is necessary because this Court has determined that Plaintiffs are contractually bound to litigate their claims in the Bahamas.

## IV.  CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss Plaintiffs' Complaint (dkt # 8) is GRANTED IN PART.  Plaintiffs are bound by the forum-selection clause requiring Plaintiffs' claims to be brought in the Bahamas.  The Clerk of the Court is instructed to CLOSE this case.  All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 19th day of September, 2008.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record

7

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 07-61171-CIV-MARRA/JOHNSON

MIYOUNG SON and YOUNGKEUN SON,

      Plaintiffs,

v.

KERZNER INTERNATIONAL RESORTS,
INC., *et al.*,

      Defendants.

_____/

## OPINION AND ORDER ON MOTION TO DISMISS

THIS CAUSE comes before the Court on Defendants Kerzner International Resorts, Inc.,

Kerzner International North America, Inc., Kerzner International Limited, Kerzner International

Bahamas Limited, Island Hotel Company Limited, and Paradise Island Limited's Motion to

Dismiss Plaintiffs' Complaint (DE 15), filed November 12, 2007. The motion is now fully

briefed and is ripe for review. The Court held an evidentiary hearing on this matter on June 19,

2008. The Court has carefully considered the motion and the record and is otherwise fully

advised in the premises.

### Background

On August 17, 2007, Plaintiffs Miyoung Son ("Mrs. Son") and Youngkeun Son ("Mr.

Son") ( together, "Plaintiffs") filed a four-count Complaint (DE 1) against Defendants Kerzner

International Resorts, Inc., Kerzner International North America, Inc., Kerzner International

Limited, Kerzner International Bahamas Limited, Island Hotel Company Limited, Paradise Island

1

Limited,[1] Nassau Cruses, Limited ("Nassau Cruses"), Robert Brown, Rodger Munroe, and Silvin Brown (together, "Defendants"), asserting claims of negligence and loss of consortium against all Defendants. The facts, as alleged in the Complaint and adduced at the evidentiary hearing, are as follows: Mr. and Mrs. Son, residents of Maryland, purchased a vacation package from the Kerzner Defendants for a four-night stay at the Atlantis Resort in the Commonwealth of the Bahamas in July 2005. (Compl. ¶¶ 3, 15.) The vacation was to last from August 17 to August 21, 2005. Plaintiffs were to be accompanied by their two children, Mrs. Son's sister and brother-in-law, their three children, and a nanny. (Compl. ¶ 15.) While in the Bahamas, Plaintiffs booked an excursion through Atlantis's Tour and Excursions Center. (Compl. ¶ 17.) While on the excursion, Mrs. Son received severe and extensive injuries as a result of being pulled through the churning propellers of the excursion boat. (Compl. ¶¶ 20-21.)

Findings of Fact

1. After booking the trip, Plaintiffs received from the Kerzner Defendants a package in the mail containing information about the trip; however, the package did not contain any mention that Plaintiffs would be expected to sign a forum selection clause or choice of law clause upon check-in at the Atlantis Resort. (Pl. Ex. 1; Def. Ex. 5.)

2. On July 24, Mrs. Son received two e-mails from the Kerzner Defendants with additional information about her upcoming trip – one regarding her booking, and one regarding her sister's family's booking. (Pl. Ex. 3,4; Def. Ex. 3, 4.)

---

[1] The Court will refer to the moving parties, Kerzner International Resorts, Inc., Kerzner International North America, Inc., Kerzner International Limited, Kerzner International Bahamas Limited, Island Hotel Company Limited, and Paradise Island Limited, collectively as the "Kerzner Defendants."

3. Mrs. Son testified that she did not open the e-mails prior to departing for the Bahamas because she did not recognize the sender. Mrs. Son also testified that she did not open the e-mails and read the attached documents until very recently, but she admitted that she did receive the e-mails prior to her trip.

4. One of the documents contained in each e-mail that Mrs. Son received after making the booking stated as follows:

> During guest registration at Atlantis, Paradise Island you will be asked to sign a form agreeing to the following terms related to any claims you may have as a result of your stay at the resort: I agree that any claim I may have against Atlantis, Ocean Club, or any of their officers, directors, employees or related or affiliated companies, including, without limitation, Kerzner International Limited, Kerzner International Bahamas Limited, Island Hotel Company Limited, Paradise Enterprises Limited, Paradise Island Limited and Paradise Beach Inn Limited resulting from any events occurring in The Bahamas shall be governed by and construed in accordance with the laws of the Commonwealth of The Bahamas, and further, irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceedings whatsoever. The foregoing shall apply to all persons accompanying me, and I represent that I have the authority to sign this document on their behalf.

(Pl. Ex. 3,4; Def. Ex. 3, 4.)

5. Mrs. Son testified that she did not know she would have to sign such a document upon arrival.

6. Upon arrival, Mr. Son completed the check-in process. (Pl. Ex. 2; Def. Ex. 1.) Mr. Son signed a form on his own behalf "and the members of [his] family group or others listed below" (including Mrs. Son) which contained the following language:

> I agree that any claims I may have against the Resort Parties resulting from any events occurring in The Bahamas shall be governed by and construed in accordance with the laws of the Commonwealth of The Bahamas, and further, irrevocably agree to the Supreme Court of the Bahamas as the exclusive venue for any such proceedings whatsoever.

(Pl. Ex. 2; Def. Ex. 1.) Mr. Son stated that the check-in process lasted approximately two to

3

three minutes, that he was asked to sign several forms, and that he did not read the forms. Mr. Son said that the resort's front desk staff did not explain the contents of the forms. Mr. Son further stated that he did not intend to sign a forum selection clause, nor was he authorized to sign one on his wife's behalf. However, Mr. Son did not state that his wife had affirmatively told him not to sign any documents regarding her legal rights.

7. Mrs. Son testified that she did not authorize her husband to sign a forum selection clause, but Mrs. Son also did not state that she told her husband he was not to sign any legal documents on her behalf. Mrs. Son testified that she did authorize her husband to complete all necessary check in procedures on her behalf.

8. Plaintiffs previously visited the Atlantis Resort in December 2001. When completing check-in formalities in 2001, Mr. Son signed a form that states as follows:

> I agree that any claim I may have against Atlantis, Ocean Club, or any of their officers, directors, employees or related or affiliated companies, including, without limitation, Sun International Hotels Limited, Sun International Bahamas Limited, Island Hotel Company Limited, Paradise Enterprises Limited, Paradise Island Limited and Paradise Beach Inn Limited resulting from any events occurring in The Bahamas shall be governed by and construed in accordance with the laws of the Commonwealth of The Bahamas, and further, irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceedings whatsoever. The foregoing shall apply to all persons accompanying me and I represent that I have the authority to sign this document on their behalf.

(DE 54.)

### Standard of Review

In the Eleventh Circuit, a motion to dismiss on the basis of a forum selection clause is brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure as a motion to dismiss for improper venue. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir.

1998). Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The Court may make any findings of fact necessary to resolve a motion to dismiss for improper venue, so long as the resolution of factual disputes is not an adjudication on the merits of a case. *Bryant v. Rich*, - - F.3d - -, Nos. 06-11116 & 06-12290, 2008 WL 2469405 at *5 (11ᵗʰ Cir. June 20, 2008). Determining the reasonableness of a forum selection clause is a fact-specific inquiry to be made on a case-by-case basis. *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 864 (1ˢᵗ Cir. 1983).

Because the Court is sitting in diversity, Florida substantive law applies. *See, e.g., Admiral Ins. Co. v. Feit Management Co.*, 321 F.3d 1326, 1328 (11ᵗʰ Cir. 2003) ("Sitting in diversity, we apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result.").

**Discussion**

A forum selection clause will be held "unreasonable" in only four circumstances: 1.) when the formation of the clause was induced by fraud or overreaching; 2.) when the plaintiff would be deprived of her day in court because of inconvenience or unfairness; 3.) when the chosen law would deprive the plaintiff of a remedy, or 4.) when enforcement of the provisions would contravene public policy. *Lipcon*, 148 F.3d at 1292; *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594-95 (1988). Some courts have also made prior notice of the clause an element to consider in determining reasonableness. *See, e.g., Sun Trust Bank v. Sun International Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1258 (S.D. Fla. 2001); *Corna v. American*

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 31 of
119
Case 0:07-cv-61171-KAM   Document 60   Entered on FLSD Docket 09/05/2008   Page 6 of 23

*Hawaii Cruises, Inc.*, 794 F. Supp. 1005, 1012 (D. Haw. 1992).[2]  Here, Plaintiffs argue that the

forum selection clause was formed by fraud and overreaching, that Plaintiffs will be deprived of

their day in court if they have to sue in the Bahamas, that Bahamian law is fundamentally unfair,

and that enforcement of the forum selection clause would contravene public policy.  The Court

will address each of these arguments in turn.

Fraud and Overreaching

  Plaintiffs argue that the formation of the agreement including the forum selection

provision was "induced by fraud and overreaching." (Pl. Resp. 9.)  Plaintiffs claim that they

"never received . . . any notice of a forum selection clause prior to arriving at the hotel in the

Bahamas." (*Id.*)  Plaintiffs do not argue bad faith on the Kerzner Defendants part, and their sole

argument regarding fraud and overreaching relates to notice.  Plaintiffs also do not argue that the

forum selection clause was hidden on the forms they signed.  Instead, they argue that they did not

receive notice of the clause prior to their arrival in the Bahamas, so they could not cancel "with

impunity."  Further, they argue that the short check-in time period effectively deprived Mr. Son

---

  [2] In *Shute*, the Supreme Court did not state that lack of notice of the forum selection
clause was grounds for finding that the clause was unreasonable.  In fact, the Court stated that it
would not "address the question of whether respondents had sufficient notice of the forum clause
before entering the contract for passage" because the respondents had conceded that they had
sufficient notice.  *Shute*, 499 U.S. at 590.  However, the Supreme Court found notice relevant
insofar as the Court found a party's right to reject the contract "with impunity" essential to its
enforceability.  *Id.* at 595.  Thus, notice is a relevant inquiry when considering a forum selection
clause to determine whether the party could walk away from the contract with a minimal penalty.
In *Corna*, for instance, the Court found that two to three days notice of the forum selection clause
insufficient, because the plaintiffs would have forfeited the entire ticket price for their trip if they
had canceled the trip upon first learning of the forum selection clause.  *Corna*, 794 F. Supp. at
1011-1012; *cf. Elliott v. Carnival Cruise Lines*, 231 F. Supp. 2d 555, 561 (S.D. Tex. 2002)
(enforcing forum selection clause where cancellation at time notice of clause received by
passenger would have resulted in refund of only 50% of purchase price).

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 32 of
119
Case 0:07-cv-61171-KAM    Document 60    Entered on FLSD Docket 09/05/2008    Page 7 of 23

of the ability to read and comprehend the rights he was surrendering when he signed the

document. (*See* Pl. Resp. 9-10.)

A non-negotiated contract containing a forum selection clause may be enforceable, so

long as the contract was formed under "reasonable" circumstances. *Shute*, 499 U.S. at 593-94.

In particular, the clause must be reasonably communicated to the consumer such that the

consumer knows that the contract contains terms and conditions which affect the consumer's

legal rights. *Shankles*, 722 F.2d at 864.

With respect to the time for check-in, a perusal of the "Acknowledgment, Agreement, and

Release" form shows that the clause is not hidden in any way. The page contains seven

paragraphs regarding limitations on liability, choice of law, and other legal provisions. (Pl. Ex.

2; Def. Ex. 1.) While the forum selection provision is not written in a larger font, in bold font, or

italicized, it is still easily readable and is set off in its own paragraph in the middle of the front

side of the form. Further, the form is marked at the very top "READ BEFORE SIGNING."

Thus, the Court finds that the form clearly and unmistakably conveys that it contains terms

affecting the consumer's legal rights. The clause is not hidden among other, non-legal

provisions, nor is the clause physically disguised. The fact that Mr. Son chose not to read the

form that is clearly marked "read before signing" does not excuse Plaintiffs from their

contractual obligation. *See, e.g., Coleman v. Prudential Bache Securities, Inc.*, 802 F.2d 1350,

1352 (11th Cir. 1986) ("[A]bsent a showing of fraud or mental incompetence, a person who signs

a contact cannot avoid her obligations under it by showing that she did not read what she

signed."). The check-in process was doubtless hurried, but the Court finds that Mr. Son was not

rushed through the process so as to prevent him from taking as much time as he needed or

desired to review the document thoroughly. Mr. Son made a conscious choice – he chose to sign the form without reading it in order to speed the check-in process along. This willful ignorance cannot be used to invalidate an otherwise binding provision.

Plaintiffs then argue that they did not receive notice of the forum selection clause prior to their arrival at the Atlantis resort, such that they could not reject the provision "with impunity." In *Sun Trust Bank*, under similar facts, the court concluded that the same forum selection clause disputed in this case was unenforceable because the plaintiffs did not have an "objectively reasonable opportunity to consider and reject" the clause. *Sun Trust Bank*, 184 F. Supp. 2d at 1261. The court was presented with "undisputed" evidence that the "forum-selection clause was presented to [plaintiff] for the first time upon arrival in the Bahamas." *Id.*

Contrary to Plaintiffs assertions, this case is distinct, and *Sun Trust Bank* is inapplicable. First, Plaintiffs had both visited the Atlantis resort in 2001, and Mr. Son signed a nearly identical forum selection provision upon arriving at the resort in 2001. Having previously signed a nearly identical forum selection provision in 2001, it is reasonable to expect that Plaintiffs would be asked to sign a similar provision on their return visit. In *Horberg v. Kerzner Resorts International Ltd.*, No. 07-20250-CIV-UNGARO, slip op. at 5-6 (S.D. Fla. Aug. 6, 2007), the court enforced the same forum selection clause disputed in this case on the basis that the plaintiffs had visited the Atlantis resort on previous occasions and thus "had a reasonable opportunity to consider and reject the forum selection clause."

Also making this case distinct from *Sun Trust Bank* is the fact that the Kerzner Defendants provided Plaintiffs with prior notice that they would be asked to sign a form requiring all suits brought against the Kerzner Defendants be brought in the Bahamas. Plaintiffs

8

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 34 of
119
Case 0:07-cv-61171-KAM   Document 60   Entered on FLSD Docket 09/05/2008   Page 9 of 23

concede that Mrs. Son received two e-mails on July 24, 2005, that contained an attachment titled

"Terms and Conditions." (Pl. Ex. 4, 5.)  In the section labeled "Atlantis Registration," the

attachment explained that all guests would be asked to sign a forum selection clause upon check-

in.

      Mrs. Son testified that she did not remember receiving these e-mails from the Kerzner

Defendants, and Mrs. Son also testified that she did not open e-mails from unrecognized senders

because of the threat of computer viruses.  Mrs. Son further testified that she did not expect to

receive e-mails regarding her Atlantis resort trip.  However, Mrs. Son received these e-mails the

very same day that she booked her trip, and both e-mails had "Travel Plan" in the subject line

with a reservation number.  Logic would dictate that Mrs. Son must have provided her e-mail

address over the phone when making the reservation since she received e-mails regarding her

booking shortly thereafter.  Thus, while the Court finds Mrs. Son's testimony credible, the Court

does not agree that her decision not to read the e-mails was reasonable.[3]  Mrs. Son chose not to

read the e-mails, but the e-mails provided sufficient notice of the forum selection and choice of

---

     [3] At the hearing, Plaintiffs' counsel consistently averred that Plaintiffs did not have a
"duty" to open the e-mails they received regarding their trip but that Plaintiff had a "duty" to
open packages sent to her through the U.S. Mail.  However, the Court fails to see how Plaintiffs
make this distinction.  Plaintiffs have not identified a specific duty that Plaintiffs might have had
to open regular mail versus e-mail.  Plaintiffs' could have decided not to open the package
received through the U.S. Mail as freely as they decided not to open the e-mails.  The Court
cannot conceive of a "duty" to open a letter any more than it can conceive of a "duty" to open an
e-mail.  Plaintiffs' bear the risk that they will lose valuable information or documentation when
they choose not to receive a letter, e-mail, or any other form of communication.  Plaintiffs
weighed the risk of losing vital information against the risk of receiving a computer virus when
deciding not to open the e-mails, just as Plaintiffs weighed the risk of losing vital information
against the risk of receiving anthrax powder when deciding to open the mailed package.  The
Kerzner Defendants' should not be held liable because Plaintiffs' risk calculus led them not to
open the documentation.

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 35 of
119
Case 0:07-cv-61171-KAM   Document 60   Entered on FLSD Docket 09/05/2008   Page 10 of 23

law clauses her family would be required to sign upon arrival at the Atlantis Resort.

Finally, Plaintiffs argued at the hearing that Mrs. Son did not sign the forum selection clause, nor did she grant her husband authority to sign away her legal rights. Thus, Plaintiffs claim, the forum selection clause could not apply to Mrs. Son. The Court disagrees. First, Mrs. Son admitted that she granted her husband authority to complete all procedures necessary to check-in to the Atlantis Resort. Thus, Mr. Son had "implied authority" to sign the forum selection clause on Mrs. Son's behalf, because it was necessary for Mr. Son to sign the clause to complete check-in.[4] Alternatively, by signing the form which clearly stated he had the authority to bind everyone in his party, Mr. Son acted with "apparent authority," because the Atlantis Resort reasonably believed his representations that he had the authority to bind Mrs. Son.[5]

Moreover, a party need not sign a forum selection clause to be bound by the terms of the

---

[4] The Restatement (Third) of Agency defines "implied authority" as either (1) the authority "to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities or (2) to act in a manner which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." Restatement (Third) of Agency § 2.01 cmnt. b (2006).

[5] "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has the authority to act on behalf of the princpal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03.

The parties did not brief the issue of agency, but the parties proceeded to argue the issue of agency at the hearing. In Florida, the rule of *lex loci contractus* determines the law to be applied when determining an issue of contract law. *See Sturiano v. Brooks*, 523 So. 2d 1126 (Fla. 1988). Because the contract was executed in the Bahamas, Bahamian law would apply to whether Mr. Son was acting as Mrs. Son's agent and whether she was bound by Mr. Son's signature. The parties, however, have not provided any evidence of (nor can the Court determine on its own initiative) the scope of Bahamian agency law. The Court has turned to the Restatement (Third) of Agency as a general guideline, not as an authoritative source on the law of the Commonwealth of the Bahamas.

clause; a party can be bound if it is "closely related" to the dispute. *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993); *see also E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediaries, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). Mrs. Son is at the center of this dispute (indeed, the parties are arguing over who is responsible for her injuries) and is thus "closely related." Therefore, she can be bound to the terms of the clause whether she actually signed it or not. Again, the Court has explained that she received all the notice to which she was entitled under the law, and she should have been aware that agreeing to a forum selection clause was part of the check-in process.

In sum, the Kerzner Defendants' burden in this situation was only to provide reasonable notice to Plaintiffs, which the Kerzner Defendants achieved. Once the Kerzner Defendants sent Plaintiffs notice of the forum selection clause, it was Plaintiffs' decision as to whether they read the notification. The Court rejects Plaintiffs' argument that Defendants somehow needed to do more. Plaintiffs chose not to read the notice, and the consequences are theirs to bear. Thus, the forum selection clause will not be invalidated on this ground.

Deprivation of Day in Court and Fundamental Unfairness

Plaintiffs argue that they will be "effectively deprived of their day in court" because of the "inconvenience" of litigating in the Bahamas and because of the fundamental unfairness of Bahamian law. (Pl. Resp. 10.) First, Plaintiffs claim that Mrs. Son cannot return to the Bahamas because of the "great mental and emotional anguish" she would suffer if she was forced to return there. Mrs. Son testified that she did not want to return to the Bahamas; however, she admitted that her doctors have never stated that she is physically or mentally incapable of returning.

11

Instead, her prohibition on travel to the Bahamas appears self-imposed and, as a result, not a persuasive justification to invalidate the forum selection clause.

Likewise, Plaintiffs claim they are "financially unable to pursue litigation in the Bahamas, where contingent fees are prohibited." (Pl. Resp. 11.) This argument is also unavailing. The Court cannot give substantial weight to fact that contingency fee arrangements are not available in foreign forums. *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996). As the Fifth Circuit Court of Appeals has stated, "If the lack of a contingent-fee system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most foreign forums." *Coakes v. Arabian American Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987) (discussing contingency fee arrangements as part of *forum non conveniens* analysis).

Public Policy

Plaintiffs argue that "enforcement of the provisions of the Release would contravene a strong public policy, because enforcement of the forum selection clause would imply enforcement of the entire Release." (Pl. Resp. 11.) Plaintiffs, however, have provided no cases to suggest that enforcement of the forum selection clause by this Court would compel a Bahamian court to enforce the release of liability. The Court thus finds this argument lacks merit.

Discouraging Legitimate Claims

Finally, Plaintiffs argue that Defendants "set the Bahamas as the forum 'as a means of discouraging [hotel guests] from pursuing legitimate claims.'" (Pl. Resp. 12.) Plaintiffs point to a case in which the Kerzner Defendants chose to litigate in New Jersey state court, *Paradise Enterprises Ltd. v. Sapir*, 811 A.2d 516 (N.J. Super. Ct. 2002), to show that the Kerzner

Defendants can indeed litigate in U.S. forums. Plaintiffs claim that the fact that the Kerzner Defendants will litigate in New Jersey when they so choose shows bad faith selecting the Bahamas to litigate these claims. The Court also finds this argument unpersuasive. As the Supreme Court held in *Shute*, where the defendant selected a Florida forum, "[a]ny suggestion of such a bad-faith motive is belied by two facts: Petitioner has its principal place of business in Florida, and many of its cruises depart from and return to Florida ports." Here, the Kerzner Defendants, who run a resort in the Bahamas, elected a Bahamian forum to litigate disputes arising out of visitors to the Bahamian resort who are injured while staying in the Bahamas. Had Defendants selected a trial court in Thailand to settle tort claims arising out of resort stays in the Bahamas, one could make a colorable argument that the selected forum was unrelated to the dispute and selected to discourage individuals from bringing legitimate claims. Where the defendant operates a business in the selected forum and the actions that would give rise to litigation would also occur in the selected forum, the Court cannot conclude that the defendant acted in bad faith.

Accordingly, the Court finds that the forum selection clause is enforceable, and this case shall be dismissed subject to Plaintiff's ability to refile the action in the Supreme Court of the Bahamas.

## Forum Non Conveniens

Alternatively, the Court believes that this action should be dismissed on the basis of the doctrine of *forum non conveniens*. The federal doctrine of *forum non conveniens* allows the Court to use its inherent power to dismiss an action because of the inconvenience of the plaintiff's chosen forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-07 (1947). Under the

doctrine, dismissal is "appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft v. Reyno*, 454 U.S. 235, 249 (1981).

Analytically, the Court's analysis falls into three stages. First, the Court must consider whether an "adequate alternative forum" exists which has jurisdiction over the case. *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983). The Court must then consider whether private interest factors suggest that the Court should disturb the strong presumption in favor of a plaintiff's choice of forum. *Id.* If the Court finds that the private interest factors are indeterminate, the Court must then proceed to consider whether considerations of public interest favor a trial in the foreign forum. *Id.* Dismissal is only warranted if these factors weigh heavily towards trial in the foreign forum. *Piper Aircraft*, 454 U.S. at 249. This strong presumption in favor of the plaintiff's choice of forum is strongest when the plaintiff is a citizen or resident of the U.S. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1102 (11th Cir. 2004).

<u>Adequate Alternative Forum</u>

An adequate alternative forum exists when the defendant is "amenable to process" in the foreign forum. *Piper Aircraft*, 454 U.S. at 254 n.22. The defendant bears the burden of establishing that its proposed forum is adequate and has jurisdiction over the case. *La Seguridad*, 707 F.2d at 1307. Here, all but two of the Defendants in this action are Bahamian citizens or corporations. (Compl. ¶¶ 4-14.) Defendants claim that they are "undoubtedly amenable to service of process in the Bahamas." (Def. Mot. 15.) Likewise, Defendants have presented

14

evidence that the Bahamian legal system recognizes negligence actions like Plaintiffs' claims in the instant case. (Pyfrom Aff. ¶ 10.) Thus, there is no indication that Bahamian courts would not afford Plaintiffs a remedy for their claims. Moreover, courts are loathe to hold that other forums are inadequate. *See Leon v. Million Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir. 2001). Plaintiffs have not intimated that Bahamian courts would be inadequate. Thus, the Court finds that the Supreme Court of the Bahamas is an adequate alternative forum for the instant action.

Private Interest Factors

The Supreme Court has directed district courts to consider the "private interest of the litigant." *Gulf Oil*, 330 U.S. at 508. Factors considered to be in a litigant's private interest include the ease of access to sources of proof, availability of compulsory process for witnesses, cost of obtaining attendance of witnesses, ability to view the premises (if necessary), and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*

The Kerzner Defendants argue that "all of the documents related to Plaintiffs' allegations in the Complaint are in The Bahamas." (Def. Mot. 16.) The Kerzner Defendants do not state what documents are in the Bahamas, nor do they argue that such documents could not be brought to Florida in the event that trial was conducted here. Plaintiffs, meanwhile, have noted that they are already in possession of police and medical records from the Bahamas (*see* Childs Aff.), and such documents could easily be disclosed to Defendants during discovery. This factor weighs in Plaintiffs' favor.

Notwithstanding the relative ease of access to documentary evidence, the ease of access to witnesses and the ability to compel attendance at trial is not as clear. Plaintiffs have only identified one Florida citizen witness – the corporate representative of Defendant Kerzner

International Resorts, Inc. The remaining witnesses Plaintiffs seek to call are largely medical professionals from Maryland or Washington, D.C. (*See* Pl. Resp. 14-16.) Defendants, on the contrary, note that many prospective witnesses are located in the Bahamas: the staff at Doctors Hospital in Nassau, Bahamas, who initially treated Mrs. Son; representatives of Defendant Nassau Cruises, Ltd.; Defendants Robert Brown, Rodger Munroe, and Silvin Brown; as well as employees of the Atlantis Resort. (Def. Mot. 16.)

The Court recognizes that in *Ward v. Kerzner International Hotels Ltd.*, Judge Jordan held that the fact that several witnesses resided in the Bahamas was insufficient to overcome the strong presumption in favor of the plaintiff. No. 03-23087-CIV, 2005 WL 2456191 at *3 (S.D. Fla. Mar. 30, 2005). In that case, like in *Sun Trust Bank*, a majority of the Bahamian witnesses were employees of the defendants who, defendants claimed, would appear voluntarily. *Id.*; *see also Sun Trust Bank*, 184 F. Supp. 2d at 1263-64. In *Ward*, only two Bahamian witnesses were not employed by the defendants. *Ward*, 2005 WL 2456191 at *3. By contrast, in this case, most of the relevant witnesses are not employees of the Kerzner Defendants. Some of the prospective witnesses are Defendants in this action, but this Court cannot effectively subpoena these foreign nationals residing in the Bahamas and compel them to appear before this Court. In fact, these Bahamian witnesses are the very witnesses that will describe the events leading to Mrs. Son's injuries (i.e., the liability phase). The U.S. witnesses, who for the most part are medical professionals, will likely be used for the damages phase of trial. Looking at the quality of the proposed witnesses, rather than absolute numbers of potential witnesses, the Court finds that none of the most vital witnesses needed to resolve the issue of liability reside in Florida, and a substantial number of these witnesses reside in the Bahamas.

The Kerzner Defendants may be able to interview agents of Nassau Cruses, Ltd., or some of the other individual Defendants, but the Kerzner Defendants would be forced to present testimony at trial in Florida in the form of depositions or letters rogatory.  Were this situation limited to a pair of witnesses whose testimony was not in controversy (as in *Ward*), the Kerzner Defendants would be expected to proceed using these devices.  Where several of the Defendants are outside of the compulsory process of this Court and where those witnesses are the Kerzner Defendants' main witnesses to challenge Plaintiffs' claims of liability, as in this case, the Court believes that the Kerzner Defendants would be severely prejudiced in their ability to defend their case.  As the Supreme Court explained in *Gulf Oil*, the doctrine of *forum non conveniens* should be applied to avoid these situations: "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."  330 U.S. at 511.

Moreover, Plaintiffs' have not identified a single witness who would be available to testify if trial were held in Florida but would not be available to testify at trial in the Bahamas.  As all but one of Plaintiffs' witnesses are coming from locations outside of this district, all but one will have to travel.  The Court believes that it would be equally feasible for Plaintiffs to arrange plane tickets and hotel stays in Nassau, Bahamas, as it would in West Palm Beach, Florida.  These cities are roughly 200 miles apart, a relatively short distance considering that Plaintiffs will have to travel roughly 1,000 miles to reach either forum.  While there may be some inconvenience for the one Florida witness to travel to the Bahamas, Plaintiffs cannot realistically contend that the inconvenience of traveling to Nassau would vary significantly from the inconvenience of traveling to West Palm Beach. *See Wiwa v. Royal Dutch Petroleum Co.*, 226

17

F.3d 88, 107 (2d Cir. 2000) ("For any nonparty witnesses, the inconvenience of a trial in New York is not significantly more pronounced than the inconvenience of a trial in England.").

Finally, it has been widely recognized that the inability to implead other parties directly involved in a controversy is a factor weighing heavily against the plaintiff's choice of forum. *See, e.g., Reid-Walen v. Hansen*, 933 F.2d 1390, 1398 (8th Cir. 1991); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir. 1975). In this case, like in *Piper Aircraft*, the joinder of Nassau Cruises, Ltd., Robert Brown, Rodger Munroe, and Silvin Brown is "crucial to the presentation" of the Kerzner Defendants' case. 454 U.S. at 259. Plaintiffs want to show that Nassau Cruises and these individuals are the agents of the Kerzner Defendants and that the Kerzner Defendants are vicariously liable for her injuries. Without the ability to join this corporation and these individuals meaningfully to this case, the Kerzner Defendants would be forced to defend claims of vicarious liability with limited benefit of evidence from the persons actually involved in the incident giving rise to the claim. The Court finds this burden to be substantial.[6] Conversely, the Court can find no substantial burden on Plaintiffs (other than a financial burden from Plaintiffs' inability to retain counsel on a contingency fee basis) from having to litigate their dispute in the Bahamas.

After considering the private interest factors, the Court finds that they weigh substantially against Plaintiffs' selection of the Southern District of Florida as their forum. The Court will

---

[6] Unlike all of the cases involving injuries at resorts cited by Plaintiffs, this case is distinct because it involves an injury allegedly caused by third parties. In every other case, the plaintiff alleged that the resort was directly liable for negligence. Here, Plaintiffs do not argue direct negligence by the Kerzner Defendants, and the Kerzner Defendants can only defend their own case by compelling the attendance of the alleged direct tortfeasors. While these tortfeasors are nominally part of this lawsuit and have been served, their appearance in Court cannot be guaranteed.

now consider the public interest factors.

<u>Public Interest Factors</u>

In *Gulf Oil*, the Supreme Court described the considerations of public interest that district

courts should consider on a motion to dismiss for *forum non conveniens*:

> Administrative difficulties follow for courts when litigation is piled up in
> congested centers instead of being handled at its origin. Jury duty is a
> burden that ought not to be imposed upon the people of a community
> which has no relation to the litigation. In cases which touch the affairs of
> many persons, there is reason for holding the trial in their view and reach
> rather than in remote parts of the country where they can learn of it by
> report only. There is a local interest in having localized controversies
> decided at home. There is an appropriateness, too, in having the trial of a
> diversity case in a forum that is at home with the state law that must
> govern the case, rather than having a court in some other forum untangle
> problems in conflict of laws, and in law foreign to itself.

*Gulf Oil*, 330 U.S. at 508-09. Additionally, the Court must weigh the interest of the United

States in providing a U.S. forum for its citizens with the interest of the Bahamas in adjudicating a

dispute that occurred in its territory. *See SME Racks*, 382 F.3d at 1104.

While the Court begins with the proposition that Plaintiffs (both U.S. citizens) should not

be ousted from a U.S. forum, the Court finds that the public interest factors also weigh heavily in

favor of trial in the Bahamas. First, in *SME Racks*, the court made clear that the "United States

has a strong interest in providing a forum for its citizens' grievances against an allegedly

predatory foreign business that actively solicited business and caused harm *within the home*

*forum*." 382 F.3d at 1104 (emphasis added). In *SME Racks*, a U.S. plaintiff brought an action

against a Spanish company for breach of contract and various torts in Florida. *Id.* at 1099. The

contract was negotiated and executed in Spain, but the alleged breach and torts allegedly

occurred in Florida as the plaintiff claimed it received a shipment of defective goods in Florida.

19

*Id.* This case is distinguishable from *SME Racks*, because the "harm" did not occur in Florida (or even in the U.S.). Instead, Plaintiffs are suing (with one exception) Bahamian companies and individuals for conduct which occurred entirely within the Bahamas. Unlike *SME Racks*, the presumption in favor of Plaintiffs' choice of forum here is not as strong because of the attenuated connection of this forum with the events giving rise to the claims. *See, e.g., J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.,* 515 F. Supp. 2d 1258, 1274 (M.D. Fla. 2007); *see also Iragorri v. United Technologies Corp.,* 274 F.3d 65, 73 (2d Cir. 2001) *(en banc)* (holding that a U.S. plaintiff's choice of forum is not automatically granted greater deference unless the choice was motivated by "legitimate reasons").

The parties have not addressed any administrative difficulties with pursuing this case in the Bahamas, other than the fact that contingency fee agreements for Plaintiffs' counsel are not permitted in the Bahamas.[7] This factor, as the Court has already explained, receives no consideration. The Court also agrees with Plaintiffs that a view of the site of Mrs. Son's accident is meaningless because the "shifting sands are no longer as they were at the time of the accident." (Pl. Resp. 14.) The remaining factors, nonetheless, weigh heavily for the Kerzner Defendants.

A jury composed of residents of Palm Beach County, Florida, has a minimal (if any) interest in adjudicating a dispute between citizens of Maryland and (with one exception) citizens of the Bahamas for acts that occurred in the Bahamas. As explained in *Gulf Oil,* the people of Florida have no relation to this case, and thus they should not bear the burden of serving on a jury

---

[7]The Court notes the logic of *Chierchia v. Treasure Cay Services,* 738 F. Supp. 1386 (S.D. Fla. 1990), where Judge King held that "a forum in which the personal injury action arose would present a better administrative choice than one which experiences one of the busiest criminal dockets in the U.S." *Id.* at 1389.

to settle a dispute between Maryland residents and Bahamian corporations for activities in Bahamian territory. In contrast, the Bahamas has an interest in settling a dispute between its citizens and foreigners for activity that happened within its sovereign territory. The Commonwealth of the Bahamas has the strongest interest in protecting tourists and visitors from the conduct of its own citizens. *See, e.g., Calvo v. Sol Melia, S.A.*, 761 So. 2d 461, 464 (Fla. Dist. Ct. App. 2000). While the State of Florida has an interest in protecting its citizens, Plaintiffs (as well as countless other visitors to the Atlantis resort) are not citizens of Florida and they have not presented a persuasive argument for needing the protection of Florida's laws.[8]

Plus, Bahamian law will most likely govern this dispute.[9] While this Court is capable of applying Bahamian law, and the Bahamas is a common law country much like our own, the Court would be forced to rely on expert testimony and evidence provided by the parties as to the substance of Bahamian law, which would add substantially to the administrative burden of having trial in this forum. "The public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" *Piper*

---

[8]An argument could be made that the United States has an interest in protecting its citizens from harm abroad. Nevertheless, the Court feels that the interests of the Bahamas are stronger, because the events giving rise to the cause of action occurred in the Bahamas and because Defendants are Bahamian nationals. Further, Plaintiffs traveled to the Bahamas on their own volition and only after the fact seek the protection of U.S. courts.

[9]In Florida, courts apply the "significant relationship test" to determine the substantive law applied to personal injury actions. *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980). While not dispositive, the law of the state where both the injury and the conduct causing the injury occurred is, in most instances, the law to be applied. *Id.* Since Mrs. Son's accident occurred in the Bahamas, the Court finds it likely that Bahamian law will apply, at least in part, to this dispute. Notably, none of the other factors Florida courts consider (residence, nationality or place of incorporation of the parties and the place where the relationship between the parties is centered) indicate that Florida law should apply. Again, these factors would suggest either Bahamian law or Maryland law should be applied.

*Aircraft*, 454 U.S. at 251 (quoting *Gulf Oil*, 330 U.S. at 509).

Accordingly, the Court finds that the public interest factors also weigh in favor of dismissal of this action.

<u>Reinstatement of Suit</u>

The Court must ultimately determine whether Plaintiffs can reinstate their lawsuit in the alternative forum without undue prejudice or inconvenience. *See Leon*, 251 F.3d at 1310-11. As the Court has already explained, the inconvenience of traveling from Maryland to West Palm Beach, Florida, is no greater than the inconvenience of traveling from Maryland to Nassau, Bahamas. The distance between these locations is practically the same. In addition, Plaintiffs will not be prejudiced by dismissal, as Defendants are all subject to the jurisdiction of Bahamian courts. (Def. Mot. 19.) The statute of limitations will expire in August 2008, but Defendants have agreed to waive any statute of limitations defenses they might have under Bahamian law. (*Id.* at 19 n.12.) The Court, therefore, dismisses this action subject to these representations.

<u>Conclusion</u>

It is hereby **ORDERED AND ADJUDGED** that the Kerzner Defendants' Motion to Dismiss (DE 15) is **GRANTED IN PART** as follows:

1. The Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is **DENIED.** (*See* DE 31.)

2. The Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3) is **GRANTED.**

3. The Motion to Dismiss on the basis of the doctrine of *forum non conveniens* is **GRANTED.**

4. The Kerzner Defendants are deemed to have waived any statute of limitations and personal jurisdiction defenses they might otherwise raise in the Supreme Court of the Bahamas.

5. This case is **DISMISSED WITHOUT PREJUDICE** for Plaintiff to refile in the Supreme

Court of the Bahamas.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County,

Florida, this 5th day of September, 2008.

KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record

# EXHIBIT "E"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 07-20250-CIV-UNGARO

HOWARD TODD HORBERG and
KIMBERLY HORBERG, his wife,

      Plaintiffs,

vs.

KERZNER INTERNATIONAL HOTELS
LIMITED, a Bahamian company; and
KERZNER INTERNATIONAL BAHAMAS
LIMITED, a Bahamian company,

      Defendants.

_____/

### ORDER ON DEFENDANTS' MOTION TO DISMISS

This case is before the court on Defendants' Motion to Dismiss, filed April 20, 2007.

(D.E. 9.) Plaintiffs filed their Response on June 6, 2007, (D.E. 13) to which Defendants replied

on June 18, 2007. (D.E. 20.) The matter is ripe for disposition.

THE COURT has considered the motions and the pertinent portions of the record, and is

otherwise fully advised in the premises.

### BACKGROUND

This is an action for damages arising out of an alleged jet ski accident occurring in the

waters off of Paradise Island, The Bahamas. Unless otherwise indicated, the Court states the

facts as alleged in Plaintiffs' Complaint. Plaintiffs at all material times are and were United

States citizens residing in Highland Park, Illinois. (Compl. ¶ 2.) Defendant Kerzner

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 51 of
119
Case 1:07-cv-20250-UU    Document 25    Entered on FLSD Docket 08/06/2007    Page 2 of 20

International Hotels Limited[1] ("Kerzner") and Defendant Kerzner International Bahamas

Limited[2] ("Kerzner Bahamas") are Bahamian companies. (Compl. ¶ 4.)  In March 2005,

Plaintiffs were guests at the Atlantis Hotel, owned and operated by Kerzner.  (Compl. ¶ 3.)  On

March 26, 2005, Plaintiff Howard Horberg ("Horberg") rented a jet ski from a person operating a

jet ski business on the beach owned and under the sole control of the Atlantis Hotel.[3]  (Compl. ¶

3.)  Plaintiffs allege that at "that time and place, another jet ski operated by an unidentified driver

struck the jet ski operated by Horberg causing him serious bodily injuries." (Compl. ¶ 3.)

Plaintiffs' Complaint consists of two counts, including a claim for negligence (Count I) and a

claim for vicarious liability (Count II).  Plaintiffs seek damages for Horberg's pain and suffering,

mental anguish, emotional distress, permanent injury, loss of wages, incurred medical expenses,

and loss of capacity for the enjoyment of life resulting from Defendants' alleged negligence.

(Compl. ¶ 30.)  Plaintiffs also seek damages for the loss of service, society, companionship, and

consortium that Plaintiff Kimberly Horberg has suffered as a result of Defendants' alleged

negligence.  (Compl. ¶ 30.)  It is Plaintiffs' position that "Defendants failed to properly supervise

and monitor the use of jet skis by their guests on the waters off of the Atlantis Hotel." (Mot. to

---

[1] Formerly known as Sun International Hotels Limited

[2] Formerly known as Sun International Bahamas Limited

[3] Defendants have provided evidence that neither Defendants nor any business owned,
operated and/or controlled by Defendants or their affiliates rented the jet ski at issue to Mr.
Horberg." (Pyfrom Aff. ¶ 12 & Ex. C.)  In particular, Defendants have provided the Court with
a copy of the guest registration card Horberg signed upon arrival at the Atlantis, which states: "I
**UNDERSTAND, AND AGREE THAT ANY MOTORIZED WATERSPORT ACTIVITIES
("THE ACTIVITIES") ARE OFFERED BY VENDORS WHO ARE INDEPENDENT OF,
AND NOT AFFILIATED WITH THE ATLANTIS RESORT & CASINO, HARBORSIDE
RESORT OR OCEAN CLUB ("RESORT")."** (Pyfrom Aff. ¶ 12 & Ex. C.)

2

Dismiss at 2.)

On March 24, 2005, when Horberg checked into the Atlantis Hotel, Paradise Island (Aff.

of Giselle Pyfrom ("Pyfrom Aff."), Defs.' Ex. C.) , Horberg executed two guest registration

cards containing the following mandatory forum selection clauses:

> I agree that any claims I may have against the Resort Parties resulting from any
> events occurring in The Bahamas shall be governed and construed in accordance with
> the laws of the Commonwealth of The Bahamas, and further, irrevocably agree to the
> Supreme Court of The Bahamas as the exclusive venue for any such proceedings
> whatsoever.

(Pyfrom Aff. ¶ 7, Defs.' Ex. C.) Defendants' Senior Vice President, Giselle Pyfrom, explains

that Defendants typically follow a check-in procedure pursuant to which the guest is checked in

at the front desk and at the time of check-in is presented with the registration card or form, and

asked to read it, and confirm that the departure date and other information is correct, and sign it.

(Dep. of Giselle Pyfrom, May 22, 2007 ("Pyfrom Dep.") 11:4-10.) According to Pyfrom, at the

time Horberg signed the two guest registration cards at issue in this action, there was no

procedure in effect pursuant to which the desk clerk would explain to the guest that the document

the guest was asked to sign contained a forum selection clause or that there was a release of

liability to the hotel. (Pyfrom Dep. 11:11-20.) As explained by Pyfrom, the desk clerk would

"present[] the form from the desk and ask[] [the guest] to read it and ask[] [the guest] to sign it

and address[] any questions," and would "be[] open to address any questions that the guest might

have." (Pyfrom Dep. 11:16-20.) As far as Pyfrom is aware, at the time Horberg signed the guest

registration cards, Atlantis did not have a policy of sending a copy of the Acknowledgment,

Agreement, and Release to individuals who had made reservations prior to their arrival at the

Atlantis. (Pyfrom Dep. 11:21-12:6.) Further, to Pyfrom's knowledge, at the time Horberg signed

the guest registration cards, Atlantis did not have a policy of having its travel agents, upon

securing a reservation, provide a copy of the Acknowledgment, Agreement and Release to the

guest. (Pyfrom Dep. 12:7-12.)

Defendants move to dismiss this action based on a forum selection clause contained in

the two guest registration cards Plaintiff signed when checking into the Atlantis Hotel on March

24, 2005. In the alternative, Defendants move to dismiss the action based on the doctrine of

*forum non conveniens.*

ANALYSIS

I.      **Forum Selection Clause**

A motion to dismiss based on a forum selection clause is brought pursuant to Federal

Rule of Civil Procedure 12(b)(3). *See Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285,

1290 (11th Cir. 1998). When making a determination on a Rule 12(b)(3) motion, the court "may

consider matters outside the pleadings, and often must do so, since without the aid of such

outside materials, the court would be unable to discern the actual basis, in fact, of a party's

challenge to the bare allegation in the complaint that venue is proper to that court." *Ward v.*

*Kerzner Int'l Hotels*, No. 03-23087-CIV-JORDAN, 2005 WL 2456191, *2 (S.D. Fla. 2005)

(citing *Webster v. Royal Carribean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000)

(citing *Transmirra Prods. Corp. v. Fourco Glass Co.*, 246 F.2d 538, 538-39 (2d Cir. 1957))).

Forum selection clauses are "prima facie valid," and should be specifically enforced

unless the party against whom the clause is sought to be enforced can "clearly show that

enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as

fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-10, 15 (1972);

4

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991). The determination is made on a case-by-case basis. *Sun Trust Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1258 (S.D. Fla. 2001).

In *Sun Trust Bank*, under factual circumstances similar to those at issue in this action, Judge Huck found that a forum selection clause appearing on the back of a guest registration form presented to the guest for signature upon check-in was unenforceable. *Id.* at 1261. The *Sun Trust Bank* court concluded that "while Atlantis guests may be afforded sufficient opportunity to read the forum selection clause, they have no objectively reasonable opportunity to consider and reject it." *Id.* Here, as in *Sun Trust Bank*, the evidence demonstrates that Horberg was not told when he made his reservation that he would be required to sign the forum selection clause, and there is no evidence in the record indicating that when the forum selection clause was presented to Horberg upon check-in on March 24, 2005, the significance of signing the clause was explained to him, or that he was afforded sufficient opportunity to consider and reject the forum selection clause. *See also Foster v. Sun Int'l Hotels, Ltd, et al.*, No. 01-1290-CIV-KING (S.D. Fla., Feb. 4, 2002).

However, Defendants argue that in contrast to the Atlantis guests in *Sun Trust Bank*, Plaintiffs in this action were afforded sufficient opportunity to read the forum selection clause because Plaintiffs visited the Atlantis on at least four prior occasions, and were presented with and signed guest registration cards containing the forum selection clause on each of those visits. (Pyfrom Aff. ¶¶ 4-6, Exs. A & B.) The Court finds Defendants' argument to be persuasive. Defendants have demonstrated that Plaintiffs, on multiple occasions, were presented with and signed a guest registration form containing the relevant forum selection clause. In contrast to the

*Sun Trust Bank* plaintiffs, the evidence in the record demonstrates that Plaintiffs in this case had a reasonable opportunity to consider and reject the forum selection clause contained in the guest registration card because Plaintiffs were not presented with the forum selection for the first time upon check-in on March 24, 2005.

The Court's determination as to a forum selection clause's enforceability is made on a case-by-case basis. *See, Carnival Cruise Lines*, at 595; *Shankles v. Caster Armatori, S.P.A.*, 772 F.2d 861, 864 (1ᵉ Cir. 1983). If Horberg had been presented with the guest registration card for the first time on March 24, 2005, the Court might reach a different conclusion. However, Horberg had been presented with, and signed, the guest registration card at issue on multiple occasions. Consequently, under the facts of this case, the Court finds the forum selection clause Horberg signed on March 24, 2005, to be enforceable. The case therefore should be dismissed on these grounds alone; however, even assuming that the forum selection clause is unenforceable under the facts of this case, the Court finds, for the following reasons, that the action should be dismissed on grounds of *forum non conveniens*.

II.     **Forum Non Conveniens**

Under the doctrine of *forum non conveniens*, a district court has the inherent power to decline to exercise jurisdiction even when venue is proper. *See Gulf Oil v. Gilbert*, 330 U.S. 501, 506-07 (1946). The "central focus of the *forum non conveniens* inquiry is convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). To obtain dismissal under the doctrine, "the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private interest factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Leon v. Million Air, Inc.*, 251

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 56 of
119
Case 1:07-cv-20250-UU   Document 25   Entered on FLSD Docket 08/06/2007   Page 7 of 20

F.3d 1305, 1310-11 (11th Cir. 2001).

With respect to the second element of the analysis, there is "ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co.*, 454 U.S. at 255. However, a United States plaintiff's choice of forum may be afforded less deference where the plaintiff is suing outside of his or her home forum. *Iragorri v. United Techs., Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (explaining that the court gives greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons, including the plaintiff's convenience, and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage); *Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998) (according the plaintiffs' choice of forum less deference where none of the plaintiffs were residents of the forum in which they were suing); *see also Foster v. Sun Int'l Hotels, Ltd.*, No. 01-1290-CIV-KING (S.D. Fla., Feb. 4, 2002) ("Though there is ordinarily a strong presumption in favor of the plaintiff's chosen forum, that presumption applies with less force when the plaintiff has chosen to sue in a forum in which he does not reside."); *Morrone v. Sun Int'l Hotels, Ltd.*, No. 05-61600-CIV-SEITZ (S.D. Fla., Sep. 22, 2006) ("That presumption of convenience is diminished somewhat, however, when a plaintiff chooses to sue in a forum in which he does not reside. . . . [and the fact] that a domestic plaintiff files suit somewhere in the U.S. does not automatically preclude dismissal in favor of a foreign forum, so long as the reviewing court is convinced that there are extreme circumstances in which manifest injustice would result from retaining the case in the plaintiff's chosen forum." (citing *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101-02 (11th

Cir. 2004)).[4]

The Court must "consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing the plaintiff's initial forum choice." *Ward*, 2005 WL 2456191, at *1 (citing *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983)). Where the Court "finds this balance of private interests to be in equipoise or near equipoise, it must then determine whether or not factors of public interest tip the balance in favor of a trial in a foreign form." *Id.* (citing *La Seguridad*, 707 F.2d at 1307). "'[P]rivate factors are generally considered more important' than public ones," however, "courts should consider both public and private factors 'in all cases.'" *Id.* (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001)). The Eleventh Circuit requires the defendant to present "positive evidence of unusually extreme circumstances and thoroughly convince [the court] that material injustice is manifest before ousting a domestic plaintiff from this country's courts." *Id.* (quoting *SME Racks*, 382 F.3d at 1101-02).

1.    Availability of Adequate Alternative Forum

The defendant has the initial burden of establishing that an adequate alternative forum exists with jurisdiction over the entire case. *La Seguridad*, 707 F.2d at 1307. "Ordinarily, [the availability] requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 265 n.22 (quoting *Gilbert*, 330 U.S. at 506-07). Defendants are Bahamian corporations headquartered in Paradise Island, in The Bahamas.

---

[4]However, the Court also notes that in *Ward v. Kerzner*, Judge Jordan declined to afford a Georgia plaintiff less deference where the Georgia plaintiff brought his case against Kerzner in Florida courts because in *Ward* it appeared that there was not other domestic jurisdiction than Florida where venue would be proper and there was not other evidence of forum shopping. *Ward*, 2005 WL 24516191, at *2 n.3.

8

(Pyfrom Aff. ¶ 3.)  It is undisputed that Defendants are amenable to process in The Bahamas.

Moreover, Plaintiffs concede that Defendants "have shown that The Bahamas is an adequate

forum." (Pls.' Opp'n to Defs.' Mot. to Dismiss ("Resp.") at 5.)  *See also Chierchia v. Treasure

Cay Servs.*, 738 F. Supp. 1386, 1388 (S.D. Fla. 1990); *Morse v. Sun Int'l Bahamas, Ltd.*, No. 98-

7451-CIV-JORDAN, 2001 WL 34874967, at *2 (S.D. Fla. Feb. 26, 2001), *aff'd* 277 F.3d 1379

(11th Cir. 2001); *Morrone*, No. 05-61600-CIV-SEITZ.  Accordingly, this Court has no reason to

find other than that The Bahamas provides Plaintiffs with an adequate alternative forum, and the

Court must weigh the private and public interest factors to determine whether the action should

be dismissed. *Piper Aircraft*, 454 U.S. at 257.

2.    Private Interest Factors

The private interest factors that the Court must consider include the "relative ease of

access to sources of proof; availability of compulsory process for attendance of unwilling, and

the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view

would be appropriate to the action; and all other practical problems that make trial of a case easy,

expeditious and inexpensive." *Piper Aircraft*, 454 U.S. 241 n.6 (quoting *Gilbert*, 330 U.S. at

508).  The accident giving rise to this action occurred in The Bahamas.  Defendants argue that

"all of the documents related to Plaintiffs' allegations in the Complaint are in The Bahamas and

the overwhelming majority of the relevant witnesses reside in The Bahamas, many of whom are

not employed by Defendants or their affiliates and cannot be compelled to testify here in

Florida." (Pyfrom Aff. ¶¶ 9-11.)

Plaintiffs argue the Court "should look to the quality of the proposed witnesses rather

than their number," and Plaintiffs further argue that the location of witnesses under Defendants'

control is irrelevant to the *forum non conveniens* analysis. (Resp. at 9-10.) *See Morse*, 2001 WL 34874967, at *3 (acknowledging that courts should look to the quality of the proposed witnesses rather than their number); *Ward*, 2005 WL 2456191, at *3. Plaintiffs further argue that where "the moving party has merely made a general allegation that certain witnesses are necessary, without identifying them or the substance of their testimony, the motion must be denied." (Resp. at 9-10.) *See J.I. Kislak Mortgage Corp. v. Connecticut Bank & Trust Co.*, 604 F. Supp. 346, 348 (S.D. Fla. 1985).

Defendants have identified the following witnesses who are located in The Bahamas and are currently employed by Defendants or their affiliates: (1) Security Investigator Jacob Shaw, who filed a report concerning the alleged accident; (2) Nurse Moneur, who cared for Horberg immediately after the alleged accident and also filed a report of the incident; (3) Guest Services Agent Carnetta Carew, who accompanied Horberg to Doctors Hospital in The Bahamas following the alleged accident; and (4) Hotel Assistant Manager Tanya Dames, who also accompanied Horberg to Doctors Hospital in The Bahamas following the alleged accident. (Pyfrom Aff. ¶ 9.)

More importantly, Defendants also have identified the following witnesses who are located in The Bahamas and are not employed by Defendants or their affiliates: (1) Dr. Bullard, a physician from Doctors Hospital who treated Horberg shortly after the alleged accident; (2) former Atlantis Water Features Supervisor, Bianca Zieim, who first learned of Horberg's alleged accident and who reported such accident to Atlantis security; (3) unidentified physicians and nurses at Doctors Hospital who examined and/or treated Horberg upon his arrival at Doctors Hospital; (4) Captain Allens of the Paradise Island Port Authority, who was involved in the

investigation of the alleged accident; and (5) unidentified officers of the Paradise Island Police

Force, who were also involved in the investigation of the alleged accident. (Pyfrom Aff. ¶ 10.)

The fact that many key witnesses, not within the Court's compulsory process, are located in The

Bahamas is a private interest factor weighing in favor of dismissal.[5] *See Morse*, 2001 WL

34874967, at *3; *Morrone*, No. 05-61600-CIV-SEITZ.  The Supreme Court in *Gilbert* explained

that "to fix the place of trial at a point where litigants cannot compel personal attendance and

may be forced to try their cases on deposition, is to create a condition not satisfactory to court,

jury or most litigants." *Gilbert*, 330 U.S. at 511.  As Defendants point out, if this case were to

proceed in Florida, Defendants' case would consist mostly of deposition testimony. (Defs.' Mot.

to Dismiss at 14.)

Nonetheless, Plaintiffs argue that the private interest factors weigh in favor of this forum

because the "main eyewitnesses, the Plaintiff and Plaintiff's son, live in the United States," and

"[i]t appears that these defendants have at least identified another U.S. witness as shown by the

subpoena attached as Exhibit J." (Resp. at 11 & Ex. J.)  Plaintiffs assert that Horberg's "primary

medical treatment was in Miami and Illinois, and would involve witnesses located in Florida and

Illinois." (Resp. at 11.)   Plaintiffs further assert that the "non-employee Bahamian witnesses

have not been shown to require live testimony" (Resp. at 11.), whereas, according to Plaintiffs,

"the availability of the non-Bahamian witnesses [in the United States] forecloses any

---

[5]The Court finds that contrary to Plaintiffs' characterization, Defendants' identification of
witnesses who are located in The Bahamas and are not employed by Defendants or their affiliates
does not constitute a mere "general allegation that these witnesses are necessary, without
identifying them or the substance of their testimony." Rather, the Court finds that Defendants
have sufficiently explained each potential witnesses's connection to the accident giving rise to
this action.

demonstration that the evidence and witnesses predominate in The Bahamas." (Resp. at 11.)

The Court simply is not persuaded by Plaintiff's arguments regarding the accessability of witnesses. Plaintiffs have not specifically identified any key witness located in Florida. Even the Horbergs and their son are not located in Florida. Although Horberg received medical treatment in Miami and Illinois, the initial treating physician is located in The Bahamas and Horberg's post-surgery rehabilitation has been in Illinois. The testimony of physicians who treated Horberg in Miami and Illinois are relevant to Horberg's surgical procedure and related hospitalization in Miami and his rehabilitation in Illinois and, therefore, relevant only to the issue of damages. *See Morse*, 2001 WL 34874967, at *3 (citing *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 17 (1st Cir. 2000); *Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv*, 711 F.2d 1231, 1240 n.26 (5th Cir. 1983)). While the Court appreciates Plaintiffs desire to present their damages testimony here, first they must establish liability and virtually all of the liability witnesses, especially important third party witnesses, and some of the more important damages witnesses are located in the Bahamas. Also, while there may be some inconvenience to the few Miami witnesses in traveling to the Bahamas, given that all of the other domestic witnesses are located in Illinois, Plaintiffs cannot seriously contend that they will be more inconvenienced by having to travel to the Bahamas instead of Miami. *See Morse*, 2001 WL 34874967, at *3, (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000); *Chierchia v. Treasure Cay Servs.*, 738 F. Supp. 1386, 1388 (S.D. Fla. 1990)); *Morrone*, No. 05-61600-CIV-SEITZ.

Plaintiffs also argue that Defendants have "failed to identify any documentary or physical evidence that could not be obtained if the trial were conducted here." (Resp. at 10.) *See Morse*, 2001 WL 34874967, at *3; *Doe v. Sun Int'l Hotels, Ltd.*, 20 F. Supp. 2d 1328, 1330 (S.D. Fla. 1998). However, with respect to documentary evidence, Defendants assert that "Plaintiffs' accident file containing security reports and incident reports, the medical records from the

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 62 of
119
Case 1:07-cv-20250-UU   Document 25   Entered on FLSD Docket 08/06/2007   Page 13 of 20

Bahamian hospital, and all of the Atlantis's records regarding the maintenance and condition of
the area in question are located in The Bahamas" (Reply at 8.), and they have supported that
assertion with Pyfrom's testimony.  Pyfrom Aff.¶11. The Plaintiffs have not controverted these
assertions except to complain that these items of documentary evidence have not been gathered
yet.  However, regardless of whether the documentary evidence are located in the Bahamas has
been compiled by now, the uncontroverted fact remains that the most of the important
documentary evidence (including the accident report, report of investigation, witness statements,
records of the initial medical treatment, records of property ownership and business records) is
located in the Bahamas, while all that is located in the United States are some of the medical
records.

Defendants further rely on the fact that viewing the site of the accident will be relevant.
(Reply at 8.) *See Morse*, 2001 WL 34874967, at *4.  *But see Ward*, 2005 WL 2456191, at *4.
Plaintiffs dispute this contention arguinge that Defendants have not "alleged or established that
there is anything unusual about the physical layout of the site that cannot be adequately and
accurately depicted in photographs and diagrams." (Resp. at 13.)  Plaintiffs site *Sun Trust Bank*,
184 F. Supp. 2d at 1264, in support of their assertion that Defendants have not sufficiently shown
that viewing the physical location of the accident will be relevant.  However, as Defendants point
out, this action is distinguishable from *Sun Trust Bank* as liability was uncontested in *Sun Trust
Bank*, whereas here, Defendants dispute liability.  *See Sun Trust Bank*, 184 F. Supp. 2d at 1264
(explaining that "the cause of [] death [did] not even appear to be in dispute," because the child
had been violently sucked into a drain pipe on the defendants' premises, and that "given [these
circumstances], there [did] not seem to be much need for a jury (which there likely [would] not

13

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 63 of
119
Case 1:07-cv-20250-UU   Document 25   Entered on FLSD Docket 08/06/2007   Page 14 of 20

be if the action [was] tried in The Bahamas) to view the general lagoon area and facilities" where

the drain pipe was located).[6] The Court finds, based on the allegations in the complaint as well

as other information in the record, that a view of the scene of the accident likely would be useful

to the trier of fact and superior to the exclusive use of photographs, diagrams and schematics

advocated by the Defendants.

     An additional private interest factor for the Court to consider is the ability to implead

other entities. *See Morse*, 2001 WL 34874967, at *4 (citing *Piper Aircraft*, 454 U.S. at 259-60);

*Morrone*, No. 05-61600-CIV-SEITZ. Defendants argue that this factor is significant in this

action, because "neither Defendants nor any business owned, operated and/or controlled by

Defendants or their affiliates rented the jet ski at issue to Mr. Horberg."[7] (Mot. to Dismiss at 14;

Pyfrom Aff. ¶ 12 & Ex. C.) Defendants argue that they will not be able to implead this yet-to-be

identified, presumably Bahamian entity if the suit is tried in Florida, because it is unlikely that

entity will be subject to this Court's jurisdiction . (Mot. to Dismiss at 14; Pyfrom Aff. ¶ 12.)

This action involves the alleged direct negligence of this yet-to-be identified, presumably

Bahamian entity, and the inability to implead this party, once identified, weighs in favor of

---

     [6]The Court also notes that in contrast to *Ward*, where the court found that the defendant
had "neither alleged nor established that there [was] anything unusual about the physical layout
of the site that [could not] be adequately and accurately depicted in photographs, diagrams, and
videotapes," this Court is convinced that a view of the accident scene is important to the liability
issue in this action. *See Ward*, 2005 WL 2456191, at *4.

     [7]Defendants have provided the Court with a copy of the guest registration card Horberg
signed upon arrival at the Atlantis, which states: "**I UNDERSTAND, AND AGREE THAT
ANY MOTORIZED WATERSPORT ACTIVITIES ("THE ACTIVITIES") ARE
OFFERED BY VENDORS WHO ARE INDEPENDENT OF, AND NOT AFFILIATED
WITH THE ATLANTIS RESORT & CASINO, HARBORSIDE RESORT OR OCEAN
CLUB ("RESORT")."** (Pyfrom Aff. ¶ 12 & Ex. C.)

dismissal under the doctrine of *forum non conveniens*. *See Morse*, 2001 WL 34874967, at *4

(finding that inability to implead a Bahamian watersports vendor weighed in favor of dismissing

a negligence suit against the Atlantis Hotels, explaining that if the Atlantis could demonstrate

that a watersport accident–caused when an Atlantis Hotel guest riding on a "banana boat" was

struck by a jet ski–occurred solely as a result of the negligence of the watersports vendors, then

they could be relieved of liability).

As in *Morse*, in this action, "litigating all claims in The Bahamas avoids a scenario in

which [Defendants] would pursue their cross-claims against [the independent watersports

vendor] in The Bahamas while defending the action against [Plaintiffs] in the United States,

without compulsory process to obtain key witnesses." *Morse*, 2001 WL 34874967, at *4. As the

*Morse* court explained, even though Defendants, if found liable in this Court, may seek

contribution from the independent watersports vendor in The Bahamas, "such an approach runs

the risk of inconsistent verdicts." *Morse*, 2001 WL 34874967, at *4 (citing *Piper Aircraft Co.*,

454 U.S. at 243). "Because judicial economy favors resolution of all claims in one trial,

[Plaintiffs'] chosen forum would be unduly burdensome and dismissal is warranted." *Morse*,

2001 WL 34874967, at *4 (citing *Piper Aircraft Co.*, 454 U.S. at 259; *Iragorri*, 203 F.3d at 15;

*Fitzgerald v. Texaco*, 521 F.2d 448, 453 (2d Cir. 1975); *Kristoff v. Otis Elevator Co.*, 1997 WL

67797, at *3 (E.D. Pa. Feb. 14, 1997); *Kilvert v. Tambrands, Inc.*, 906 F. Supp. 790, 796

(S.D.N.Y. 1995); *Am. Home Assurance Co. v. Ins. Corp. of Ireland*, 603 F. Supp. 636, 641 n.5

(S.D.N.Y. 1984). The Court also notes that in *Ward*, Judge Jordan specifically explained that a

"key difference" between *Morse* and *Ward* was "the ability to implead necessary third parties.

*See Ward*, 2005 WL 2456191, at *3 n.4 (explaining that "[s]ince *Morse* was decided, the

15

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 65 of
119
Case 1:07-cv-20250-UU   Document 25   Entered on FLSD Docket 08/06/2007   Page 16 of 20

Eleventh Circuit has made clear that the defendant must set forth 'positive evidence of unusually extreme circumstances' to overcome the strong presumption in favor of a domestic plaintiff's chose forum") (citing *SME Racks*, 382 F.3d at 1103).

Finally, Plaintiffs argue that "even if [Horberg] could make a trip to The Bahamas, he would face significant impediments," for example, Plaintiffs argue that the "unavailability of contingency fees or a jury trial in The Bahamas may not make the alternative forum inadequate, but it is relevant in the private-interest balance." (Resp. at 12.) *See Macedo v. Boeing Co.*, 693 F.2d 683, 690 (7th Cir. 1982); *Doe*, 20 F. Supp. 2d at 1330 ("In The Bahamas, the plaintiff would not be entitled to a jury trial and she would be unable to obtain a lawyer on a contingency fee basis. It is undisputed that the eighteen-year-old plaintiff does not have the financial ability to bring a lawsuit in The Bahamas. Thus, for all practical purposes, the plaintiff would be unable to maintain a lawsuit in The Bahamas."). While the Court recognizes that the absence of a contingency fee system is a private interest factor that may be taken into consideration in determining whether an action should be dismissed on grounds of *forum non conveniens*, the Eleventh Circuit has determined that "the lack of a contingent fee system and the lack of a trial by jury are not entitled to substantial weight." *See Morse*, 2001 WL 34874967, at *5 (citing *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996)). Thus, even taking into consideration the unavailability of contingency fees or a jury trial in The Bahamas, the Court finds that in this action, this factor does not weigh heavily against dismissal on grounds of *forum non conveniens*.

In sum, after carefully considering the arguments of both parties, the Court finds that the private interest factors weigh heavily in favor of dismissal. The Court finds that if the claims are

16

brought in The Bahamas, the parties will have greater access to all important witnesses and documents necessary to present their case. On the other hand, if the action remains in this Court, Plaintiffs will be deprived of key witness testimony and the ability to implead independent third-party watersports vendor. Therefore, taking into consideration all private interest factors, the Court finds that dismissal of this action under the doctrine of *forum non conveniens* is warranted.

3.    Public Interest Factors

The public interest factors to be considered include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 509). The Court has already determined that the private interest factors weigh heavily in support of dismissal, and, even if they did not, the Court finds that the public interest factors also weigh heavily in favor of dismissal.

The Court recognizes that the first factor, "administrative difficulties flowing from court congestion," has "been properly accorded little or no weight or analysis." *Morse*, 2001 WL 34874967, at *7; *Sun Trust Bank*, 184 F. Supp. 2d at 1266. However, even according this factor little or no weight or analysis, the public interest factors still weigh heavily in favor of dismissal.

To begin with, this is an action in negligence brought by two citizens of Illinois against two Bahamian entities, arising out of an accident that allegedly occurred in The Bahamas. The dispute has little or no relation to Florida, and Florida has little or no interest in adjudicating

claims under Bahamian law arising out of an incident that occurred in Bahamian waters under circumstances where Plaintiffs voluntarily traveled to The Bahamas. Compelling local jurors to sit on a trial to resolve this case that has no connection to this community would impose an unfair burden. *See Chierchia v. Treasure Cay Servs.*, 738 F. Supp. at 1388; *Proyectos Orchimex de Costa Rica v. E.I. Du Pont Nemours & Co.*, 896 F. Supp. 1197, 1203 (M.D. Fla. 1995) ("The burden of imposing jury duty on citizens to decide a case with no connection to the forum is a significant factor in performing a *forum non conveniens* analysis. In these cases, the jury duty burden weighs heavily in favor of dismissal.").

Further, the Court finds, for obvious reasons, that The Bahamas has a much stronger local interest in deciding this action. Defendants are Bahamian entities, and the alleged accident occurred off the waters of The Bahamas. The case involves a prominent Bahamian resort, and tourism is the largest industry in The Bahamas. The Bahamas has a vital interest in regulating the standards of conduct of the Bahamian Defendants. *See Foster v. Sun Int'l Hotels, Ltd.*, No. 01-1290-CIV-KING (S.D. Fla., Feb. 4, 2002); *Kawasaki Motors Corp. v. Foster*, 899 So. 2d 408, 412 (Fla. 3d DCA 2005).

The Court recognizes that the United States does have an interest in "providing its own citizens with a forum to seek redress for injuries caused by foreign defendants." *Ward*, 2005 WL 2456191, at *5 (finding "The Bahamas interest [was] somewhat lessened where the sole plaintiff is an American citizen") (citing *Sun Trust Bank*, 184 F. Supp. 2d at 1266; *SME Racks*, 382 F.3d at 1104). However, under the circumstances of this case, especially taking into consideration the fact that Plaintiffs traveled voluntarily to The Bahamas on multiple occasions, the interest of The Bahamas outweighs that of the United States. Plaintiffs also argue that both Defendants have a

18

substantial presence in Florida, and that much or "almost all" of Horberg's medical treatment took place in Florida and Illinois.

The Court recognizes that in *Ward*, Judge Jordan found that the United States had an interest in litigation involving the Kerzner defendants because they have conducted business in the United States through their South Florida offices. *Ward*, 2005 WL 2456191, at *5 (citing *SME Racks*, 382 F.3d at 1104). However, the crux of this action is Defendants' alleged negligence in failing to properly supervise and monitor the use of jet skis by their guests off the waters of the Atlantis, in The Bahamas. This Court finds that while Defendants may maintain offices or otherwise have a presence in Florida, that presence is not of great relevance to this lawsuit. Moreover, the Court finds it significant that Horberg's medical treatment in Florida and Illinois is more relevant to the issue of damages than liability. Thus, despite the *Ward* court's contrary conclusion, this Court finds that these public interest factors do not tip the scales in favor of trying the case in the Southern District of Florida.

The final relevant public interest factor, an important factor, is the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law. Bahamian law will undisputably apply in this action, and the Court finds that this factor weighs in favor of dismissal. *See Morse*, 2001 WL 34874967, at *7 (citing *Piper Aircraft Co.*, 454 U.S. at 260 n.9); *Morrone*, No. 05-61600-CIV-SEITZ. *But see Ward*, 2005 WL 2456191, at *5 (finding no "conflict or difficulty" associated with applying Bahamian law). Plaintiffs argue that this factor does not weigh in favor of dismissal because there is not a significant difference between Florida law and Bahamian law. *See Ward*, 2005 WL 2456191, at *5. Nonetheless, the Court still finds that the application of Bahamian law weighs in favor of dismissal. *See Morse*, 2001 WL 34874967, at

19

*7; *see also Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1519 (11th Cir. 1985).

4.    Reinstatement of Suit

Finally, after determining that the balance of conveniences weighs in favor of The

Bahamas, the Court must ensure that Plaintiffs can reinstate their suit in the alternative forum

without undue inconvenience or prejudice. *Leon*, 251 F.3d at 1310-11. Here, as Defendants

point out, Plaintiffs have chosen a forum that is more than 1000 miles from their residence. The

Court agrees that it would be no more inconvenient for Plaintiffs and their witnesses to travel to

The Bahamas than it would be to travel to Florida. *See Chierchia*, 738 F. Supp. at 1388.

Plaintiffs will not be unduly inconvenienced, nor will they be unduly prejudiced, as Defendants

are both subject to the jurisdiction of Bahamian courts and the statute of limitations over this

action has not run. The Court also notes that Defendants agree to waive any statute of limitations

defense. (Mot. to Dismiss at 17 n.12.) Therefore, the Court dismisses this action subject to

Defendants' representations. Specifically, Defendants are deemed to have waived any statute of

limitations defenses they might otherwise raise in accordance with the representations they have

made to the Court. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida this 6th day of August, 2007.

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
Counsel of Record

20

# EXHIBIT "F"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANGELO GIORDANO,                          CASE NO. 98-7456-CIV-DIMITROULEAS

    Plaintiff,

vs.

SUN INTERNATIONAL NORTH
AMERICA, INC., a Foreign Corporation,
SUN INTERNATIONAL BAHAMAS,
LTD., a Foreign Corporation, IAN
WHEATLEY, JOHN DOE I, and JOHN
DOE II,

    Defendants.

FILED by ___ D.C.

SEP 3 0 1999

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

_____/

## FINAL ORDER OF DISMISSAL

THIS CAUSE having been heard upon Defendant's February 22, 1999 Motion To

Dismiss Complaint [DE-11], and the Court having reviewed Plaintiff's March 22, 1999 Brief in

Opposition to Defendant's Motion To Dismiss [DE-20] and Defendant's April 12, 1999 Reply

Memorandum [DE-31], finds as follows:

1.  Plaintiff is bound by the choice-of-forum agreements that he signed when he visited

the Defendant's facility, a hotel-casino.  Lipcon v. Underwriters at Lloyd's of London, 148 F. 3d

1285 (11th Cir. 1998), cert. denied 119 S. Ct. 851 (1999).  There is no allegation that Plaintiff

signed the choice-of-forum agreement because he was induced by fraud or overreaching.  The

Plaintiff can still have his day in court, albeit a bench trial, in the Bahamas.  Bahamas law would

not deprive the Plaintiff of a remedy (See Affidavit of Ferron J.M. Bethell).  Finally, no strong

public policy would be contravened by requiring a Plaintiff to litigate in the country where the

alleged injury occurred.

# EXHIBIT "G"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-61600-CIV-SEITZ/MCALILEY

THOMAS J. MORRONE,

    Plaintiff,

v.

SUN INTERNATIONAL HOTELS, LTD.,
a Bahamian Corporation; *et al*,

    Defendants.



## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS BASED ON FORUM NON CONVENIENS

    THIS MATTER is before the Court upon Defendants' Motion to Dismiss, or in the Alternative, Motion for More Definite Statement [DE-41]. Having considered the motion, the response and reply thereto, and the pertinent record and controlling case law, the Court will grant the motion to dismiss based on forum non conveniens, subject to several conditions set out below.

### I.    Background

    This is a common law negligence action. Plaintiff seeks to recover damages for personal injuries sustained while he was a visitor at the Atlantis Resort and Casino, Paradise Island ("Atlantis"), which is owned and operated by Defendants. Plaintiff is a citizen of New Jersey with, as far as the record reveals, no connection to Florida. *See* Second Amend. Compl., ¶ 1. Defendants are all Bahamian entities. *See id.*, ¶¶ 2-5; *see also* Pyfrom Aff., ¶¶ 3-4.

    While vacationing at the Atlantis in October of 2003, Plaintiff claims that he was abducted from the premises by four men who identified themselves as police officers. *See* Second Amend. Compl., ¶¶ 18-20. The abductors took Plaintiff from the Atlantis in an automobile and assaulted

-1-

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 74 of
119
Case 1:07-cv-20250-UU   Document 9-4   Entered on FLSD Docket 4/20/2007   Page 3 of 12

and robbed him over the course of several hours before dropping him off in a remote location.
*See id.* Count One of Plaintiff's two-count Second Amended Complaint alleges that Defendants
were negligent in their control of the hotel premises and their supervision and training of Atlantis
employees. *See id.*, ¶¶ 15-29. Count Two is a claim for punitive damages against Defendants
based on the same underlying conduct. *See id.*, ¶¶ 30-32.

II.   **Motion to Dismiss for Lack of Diversity Jurisdiction: Amount in Controversy**

As part of their motion to dismiss, Defendants argue that Bahamian law applies to this
dispute and that Bahamian law does not permit the imposition of punitive damages on these facts
as alleged. *See* Def. Mem. at 3; Cleare Aff., ¶¶ 6-15. Without punitive damages, Defendants
assert, Plaintiff cannot satisfy the amount in controversy requirement needed to support the
Court's exercise of diversity jurisdiction. *See id.* at 9. Even if the Court assumes that punitive
damages are unavailable, this argument is unavailing for there is sufficient evidence, primarily
through Plaintiff's affidavit, that there is more than $75,000 in controversy. Plaintiff alleges that
he was kidnapped at gunpoint, assaulted and robbed. From this factual predicate, Plaintiff avers
that he has suffered emotional distress requiring ongoing medical care and attendant expenses.
*See* Morrone Aff., ¶¶ 2-9. He also claims that the incident contributed to the breakup of his
marriage. *See* Morrone Aff., ¶¶ 8. In addition, he claims to have suffered financial losses which
in and of themselves exceed the jurisdictional threshold. *See* Morrone Aff., ¶¶ 10-17 (stating that
he was earning $70,000 per year before the incident, but now cannot maintain a steady job and
lives off of Social Security Disability; explaining that he lost a $30,000 investment in a business
opportunity because he was unable to participate in the project due to health issues). Based on the
foregoing, the Court is satisfied that Plaintiff has met his burden of establishing the amount in
controversy threshold, even without punitive damages.

III.   **Motion to Dismiss Based on Forum Non Conveniens**

The forum non conveniens doctrine expresses a court's inherent authority to decline jurisdiction over a case when it appears that the convenience of the parties and the interests of justice weigh in favor of adjudicating the action in another forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983). The touchstone of the doctrine is convenience. *La Seguridad*, 707 F.2d at 1307. Ordinarily a plaintiff is clothed in a presumption that his or her choice of forum is convenient and such a choice should rarely be disturbed. That presumption of convenience is diminished somewhat, however, when a plaintiff chooses to sue in a forum in which he does not reside. *See Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091-92 (9th Cir. 1998); *Chierchia v. Treasure Cay Services*, 738 F. Supp. 1386, 1388 (S.D. Fla. 1990) (dismissing New Yorker's action filed in Florida in favor of the Bahamas, the site of the accident). In addition, courts must give special deference to a U.S. citizen's choice of forum. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101-02 (11th Cir. 2004). However, that a domestic plaintiff files suit somewhere in the U.S. does not automatically preclude dismissal in favor of a foreign forum, so long as the reviewing court is convinced that there are extreme circumstances in which manifest injustice would result from retaining the case in the plaintiff's chosen forum. *See id.*

In ruling on a forum non conveniens motion, the Court must first determine whether an adequate alternative forum is available. *La Seguridad*, 707 F.2d at 1307; *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir. 1997). If so, then the Court must balance the public and private interests involved in litigating the case in the alternative

forum. *BCCI*, 119 F.3d at 951. "[I]n considering the private interests of the litigants, some important considerations are: relative ease of access to sources of proof; ability to obtain witnesses; possibility of view of premises, if relevant; and 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *La Seguridad*, 707 F.2d at 1307 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "[P]ublic interest factors bearing upon the forum's interest in entertaining the lawsuit [include] court congestion and jury duty generated by controversies having no relation to the forum; the desirability of having localized controversies decided at home; and the difficulties attendant resolving conflict-of-laws problems and applying foreign law." *Id.* (citing *Gilbert* 501 U.S. at 508-09). If the balance of public and private interest factors favors the alternative forum, then the Court may dismiss the action provided that "the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001)(citing *BCCI*, 119 F.3d at 951 and *La Seguridad*, 707 F.2d at 1307). With these guiding principles in mind, the Court turns to the case at hand.

A.    **Available and Adequate Alternative Forum**

Generally, a defendant satisfies his burden of demonstrating that an alterative forum is "available" by showing that he is "amenable to process in the other jurisdiction." *BCCI*, 119 F.3d at 951 (citing *Piper Aircraft*, 454 U.S. at 254 n.22); *see also Leon*, 251 F.3d at 1311 (finding forum "available" where foreign court could assert jurisdiction over the litigation sought to be transferred). Further, the alternative forum is considered "adequate" where it "offers at least some relief" to the plaintiff. *Leon*, 251 F.3d at 1311. Here, Defendants have shown that they are all Bahamian corporations, and are thus amenable to process in the Bahamas, that Bahamian law is patterned after English common law and that it recognizes actions based on common law

-4-

negligence. *See* Pyfrom Aff., ¶10. This satisfies the adequacy and availability requirements. *See, e.g., Leon, supra* (finding Ecuador available and adequate forum); *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424 (11th Cir. 1996) (France).

Plaintiff does not dispute any of these points, including whether Bahamian law applies. The only point of contention as to adequacy of the alternative forum is that Plaintiff would not be afforded a jury trial and that he would be unable to avail himself of a lawyer on a contingency fee basis. These points, which the Court accepts as true, do not undermine the adequacy of the Bahamian forum because there is no requirement that the alternative forum be identical or even substantially similar to a U.S. forum. *See Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) ("the remedies available to the plaintiffs in Argentina are neither 'clearly unsatisfactory' nor do they amount to 'no remedy at all' .... '[S]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate.'") (quoting *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 829 (2d Cir.1990)).   Indeed, the Eleventh Circuit has expressly rejected the argument that the lack of contingency fee arrangements or jury trials renders a forum inadequate. *See Magnin*, 91 F.3d at 1430; *see also Coakes v. Arabian American Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987) ("the fact that contingent fees are legally permissible in the United States but legally impermissible in England is not a factor that controls or even significantly influences the forum non conveniens determination in this case.") (cited with approval in *Magnin*). Accordingly, the Court finds the Bahamas to be an available and adequate alternative forum and now turns to the balance of the private and public interest factors.

**B.     Private Interests of the Parties**

The incident underlying this action took place in the Bahamas and Defendants have

identified a number of key fact witnesses necessary to resolution of this matter who reside in the Bahamas. Importantly, most of them are not under Defendants' control and therefore their appearance at trial in Miami is extremely doubtful, as the Court has no power to compel their attendance. In particular, those witnesses include two former doormen, Messrs. Tristan Moss and Caleb Cox, who were stationed outside the hotel entrance on the night of the alleged kidnapping. *See* Pyfrom Aff., ¶6. In addition, David Butler, a former security investigator at Atlantis, investigated the kidnapping and interviewed Plaintiff shortly after the incident. *See* Pyfrom Aff., ¶7. Moreover, at least three officers of the Royal Bahamian Police Force investigated Plaintiff's claims, including Detective Corporal Bannister, Detective Constable Rolle, and Officer McCartney. *See* Pyfrom Aff., ¶ 9. Finally, although they are current employees over whom Defendants have control, Defendants have identified at least two individuals who possess - knowledge of the incident, namely, Kevin Young and Basil Dean, Supervisor for Security Investigations and Senior Vice President of Security and Surveillance, respectively. *See* Pyfrom Aff., ¶ 8. The lack of compulsory process over the bulk of these key witnesses not only renders trial in Miami inconvenient to the defense of this case, but potentially unfair. *See Magnin*, 91 F.3d at 1430 ("the unavailability of compulsory process to secure attendance of [foreign] witnesses in a court in this country, and the cost of attendance of any [foreign] witnesses who agree to come to this country to testify" weighs in favor of dismissal); *see also Gulf Oil*, 330 U.S. at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance [of witnesses] and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."); *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 17 (1st Cir. 2000) (live witness testimony is "essential to a fair trial"). The Eleventh Circuit has described this factor as the "most important" in the analysis of private interests. *Ford*

-6-

*v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003).

Another factor favoring the Bahamas is Defendants' inability to implead potential third-party defendants. Plaintiff acknowledges that there are other corporate or individual defendants "who are or may be liable as tortfeasors on account of the actions and events described in the Complaint." Second Amend. Compl., ¶ 6-7. Although not a weighty factor here, as Defendants have yet to identify which Bahamian parties they would seek to bring into the case, there is some prejudice by the mere inability to implead these third-party defendants. *See Piper Aircraft*, 454 U.S. at 259-60 (discussing the relevance of impleading third-party defendants in forum non conveniens analysis); *Iragorri*, 203 F.3d at 15 (inability to implead favors dismissal). Finally, since this is an action regarding, among other things, Defendants' duty to maintain the safety and security of their premises, a view of the premises counsels, albeit slightly, in favor of a Bahamian forum. *See La Seguridad*, 707 F.2d at 1307.

On the other side of the private interest scale, Plaintiff lists seven witnesses who all reside in New Jersey, including his ex-wife who was with him at Atlantis, his medical providers and two witnesses who apparently possess information regarding Plaintiff's lost income damages. *See Morrone Aff.*, ¶¶ 2, 5, 12, 15. Significantly, there are no witnesses in this case who reside in Florida. As such, by choosing Miami as the forum in which to litigate – a forum over a thousand miles from Plaintiff and his witnesses' residences in New Jersey – any additional burden of traveling to the Bahamas is necessarily marginal in comparison. *See Chierchia*, 738 F. Supp. at 1388 ("[Plaintiff's] travel to Florida [from New York] to litigate would inconvenience [her] therefore her travel to the Bahamas for that purpose could be no more intrusive."). Put differently, if Plaintiff and his witnesses can travel from New Jersey to Miami without inconvenience, then they cannot be heard to complain, nor have they offered any evidence to show, that travel to the

-7-

Bahamas is unduly burdensome.

Plaintiff directs the Court to *Meier v. Sun Int'l Hotels*, 288 F.3d 1264 (11th Cir. 2002), as a "factually instructive" case, presumably because it involves a tort occurring at Paradise Island. *Meier*, however, dealt exclusively with the question of personal jurisdiction; the issue of forum non conveniens was not even discussed but remanded to the trial court for consideration. *Id.* at 1276 (noting that the "district court did not reach the issue").[1]  Based on the foregoing, the Court finds that the balance of the private interest factors strongly favor Defendants, even giving Plaintiff the benefit of the initial presumption in favor of his choice of forum. Indeed, given the real probability that key witnesses would not be available in the chosen forum, the Court is convinced that retaining the case in this forum would create a manifest injustice.

### C.   Public Interest Factors

As for the public interest factors, the Court finds that the balance of the competing interests favors a Bahamian forum and tips the balance in favor of dismissal.  First, this case has nothing whatsoever to do with Florida.  It involves a New Jersey Plaintiff, with New Jersey witnesses, suing Bahamian companies for negligent conduct occurring entirely in the Bahamas, including the criminal conduct of Bahamian third-parties.  While the Plaintiff is a U.S. citizen, and therefore deserves considerable respect in terms of choosing a U.S. forum, the lack of any relationship to Florida undermines any local interest in resolving the dispute in this forum. *See Chierchia*, 738 F. Supp. at 1388 ("a Florida jury would have only minimal interest in protecting a New York resident from ... mishaps ... which occurred in the Bahamas.").

---

[1]      *Doe v. Sun Hotels Int'l, Ltd*, 20 F. Supp.2d 1328 (S.D. Fla. 1998), is also factually distinguishable because there were no witnesses outside defendants' control, thus ensuring that no key witnesses would be absent from trial.

Case 1:09-cv-22738-JEM   Document 9-1   Entered on FLSD Docket 11/16/2009   Page 81 of
119
Case 1:07-cv-20250-UU   Document 9-4   Entered on FLSD Docket 4/20/2007   Page 10 of 12

Second, it is undisputed that Bahamian law will apply to this case. This factor also favors dismissal. *See Piper Aircraft*, 454 U.S. 260 n.29 (need to apply foreign law favors dismissal); *see also Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 937-38 (11th Cir. 2005) ("The need to apply foreign law is a public-interest factor that mitigates strongly in favor of dismissal."). Even though the parties agree that Bahamian law applies, they dispute the content of that law. *Compare* Def. Mem. at 3-8 (conducting choice of law analysis and concluding the Bahamian law precludes punitive damages on these allegations) *with* Plf. Opp. Mem. at 3-8 (arguing that Bahamian law allows punitive damages in a case such as this). Indeed, the parties' extensive arguments about the content of Bahamian law strongly counsels in favor of allowing a Bahamian court to adjudicate the claims. *See Ford v. Brown*, 319 F.3d 1302, 1307 (11th Cir. 2003) ("it is '[f]ar better that the case be tried in [a foreign country] by one or more jurists as familiar with [foreign] law as we are unfamiliar with it.'") (quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996)).

Furthermore, the Bahamas' interest in the outcome of this litigation outstrips any interests of this forum. Aside from the general proposition that "there is a local interest in having localized controversies decided at home," the particular crux of this dispute is the limit of a Bahamian hotel's duty to protect its invitees from third-party criminal conduct. This is inherently a local interest of Bahamian concern, all the more so given that tourism is the single largest industry in the Bahamas and the Atlantis is the largest hotel and single largest employer in the Bahamas. *See* Pyfrom Aff., ¶ 11; *Chierchia*, 738 F. Supp. at 1388; *see also Ford*, 319 F.3d at 1307 (noting that foreign relations and international comity are necessarily implicated in any forum non conveniens analysis where the alternative forum is in a foreign nation). The only countervailing interest is Plaintiff's desire to be compensated for his injuries, which, as addressed above, the Bahamian

Case 1:09-cv-22738-JEM Document 9-1 Entered on FLSD Docket 11/16/2009 Page 82 of
119
Case 1:07-cv-20250-UU Document 9-4 Entered on FLSD Docket 4/20/2007 Page 11 of 12

*CASE NO. 05-61600-CIV-SEITZ/McALILEY*

courts are adequately available to redress. Accordingly, for the reasons set forth above, the Court

finds that the balance of the public and private interest factors strongly favor the Bahamas,

notwithstanding the deference due to Plaintiff's choice of forum.

**D.    Conditions of Dismissal**

"In order to avoid unnecessary prejudice to [plaintiffs], the district court can attach

conditions to a dismissal with which the defendants must agree, including, for example, that the

defendants agreed to submit to the jurisdiction of the [alternative forum], waive any statute of

limitations or jurisdictional defenses, and satisfy any final judgment." *Ford*, 319 F.3d at 1307

(internal quotations to *Magnin*, 91 F.3d at 1430, omitted). Defendants have already agreed to

waive any limitations defenses, even though the limitations period does not appear to have run.

*See* Def. Mem. at 16 n.9. The Court will require, as a condition of dismissal, that Defendants file

a written stipulation that they will accept service in the Bahamas, will not raise jurisdictional or

limitations defenses, and will agree to the enforcement of any Bahamian judgment in a U.S. court

and the prompt satisfaction of any monetary judgment. With these conditions, the Court is

satisfied that Plaintiff will avoid unnecessary prejudice from dismissal. Therefore, for the reasons

set forth above, it is hereby

ORDERED that

(1) Defendant's Motion to Dismiss, or in the Alternative, Motion for More Definite Statement

[DE-41] is GRANTED and Plaintiff's action is dismissed based on forum non conveniens, subject

to the following conditions to which Defendants must stipulate in writing by **September 27,**

**2006:**

(A) Defendants will agree to accept service from Plaintiff in the Bahamas;

-10-

CASE NO. 05-61600-CIV-SEITZ/MCALILEY

(B) Defendants will waive any defenses based on statute of limitations, jurisdiction or

venue in the Bahamas;

(C) Defendants will agree that any judgment rendered by a Bahamian court shall be

enforceable in the U.S. courts and promptly saisfied;

(2) If Defendants fail to abide by these conditions, the Court will reopen the case;

(3) Any other pending motions not otherwise decided are DENIED AS MOOT; and

(4) This case is CLOSED for administrative purposes.

DONE and ORDERED in Miami, Florida, this 22nd day of September, 2006.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    Magistrate Judge McAliley
       All Counsel of Record

-11-

# EXHIBIT "H"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

DAVID FOSTER,

      Plaintiff,

v.

SUN INTERNATIONAL HOTELS, LTD.,
SUN INTERNATIONAL BAHAMAS, LTD.,
and PARADISE ISLAND, LTD.,

      Defendants.

_____/

CASE NO. 01-1290-CIV-KING



FILED by _____ D.C.

FEB 0 4 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss filed August 15,

2001. Plaintiff filed a Response on November 13, 2001. Defendant filed a Reply on December 10,

2001. The Court heard oral argument on the motion on December 19, 2001.

Plaintiff David Foster, a citizen of California, has filed a single-count Complaint in this

action alleging negligence against three Bahamian corporations – Defendants Sun International

Hotels, Ltd., Sun International Bahamas, Ltd., and Paradise Island, Ltd.. The Complaint alleges that

Plaintiff was injured when he slipped and fell at the Atlantis Resort and Casino on Paradise Island

(the "Atlantis Resort") while he was staying there as a guest. All three Defendants have moved to

dismiss Plaintiff's Complaint for lack of personal jurisdiction, improper venue and forum non

conveniens.

### I. Personal Jurisdiction

Plaintiff has conceded that the Court lacks jurisdiction over Defendant Paradise

Island, Ltd.. Accordingly, the Court will dismiss Defendant Paradise Island, Ltd. from this action.



The Court will not address the other Defendants personal jurisdiction arguments because it finds the doctrine of forum non conveniens to be dispositive of this case. See, e.g., Burton v. United States, 196 U.S. 283, 295 (1905) ("It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.").

## II. Forum Selection Clause

Defendants have moved to dismiss this action based on a forum selection clause contained in a reservation form that Plaintiff signed when checking in at the Atlantis Resort. Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). In dealing with the forum selection clause at issue here, however, the Court must be mindful that a reservation form of this kind "will be a form contract the terms of which are not subject to negotiation," and that an individual registering "will not have bargaining parity" with the hotel. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991). Therefore, the forum selection clause at issue here is "subject to judicial scrutiny for fundamental fairness." Id. at 595.

Judge Huck recently found the very same forum selection clause at issue here unenforceable. Sun Trust Bank, slip op. at 14-16. I agree. Plaintiff was not presented with the reservation form containing the forum selection clause until he had arrived at the Atlantis Resort and was asked to sign it during the registration process. The Atlantis Resort did not provide Plaintiff with an adequate opportunity to consider the clause and reject his contract with the Atlantis Resort. The Court finds that enforcement of the forum selection would violate fundamental fairness and therefore, will not do so. Cf. Shute, 499 U.S. at 595 (enforcing forum selection clause where plaintiffs were given notice and retained option of rejecting contract).

2

### III. Forum Non Conveniens

Defendant next moves to dismiss this action based on forum non conveniens. The forum non conveniens doctrine gives federal district courts inherent power to decline jurisdiction over a case in favor of a foreign forum. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947). The touchstone of the doctrine is convenience. See C.A. La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983). The Court must "weigh the relative advantages and obstacles to fair trial" in each forum, considering factors of private and public interest. Gulf Oil, 330 U.S. at 508.

"A party moving to dismiss on the basis of forum non conveniens must demonstrate: (1) that an adequate alternative forum is available; and (2) that the private and public interest factors weigh in favor of dismissal." Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 (11th Cir. 1997). Though there is ordinarily a strong presumption in favor of the plaintiff's chosen forum, that presumption applies with less force when the plaintiff has chosen to sue in a forum in which he does not reside. See, e.g., Gemini Capital Group, Inc. v. Yap Fishing Corp., 150 F.3d 1088, 1091-92 (9th Cir. 1998) (holding California plaintiff's choice of Hawaii is entitled to less deference because it is not home forum).

Plaintiff acknowledges that the Bahamas is an adequate alternative forum. Therefore, the Court must weigh the private and public interest factors to determine if dismissal is appropriate. Turning first to the private interest factors, the Court notes that potential material witnesses to this action are located in the Bahamas, California, Tennessee, and Florida. The key witnesses located in the Bahamas are the doctor who examined and treated Plaintiff immediately following the accident (Dr. Iferente), the security investigator who investigated the accident and interviewed Plaintiff (Kevin Young), and perhaps the Vice President of VIP Guest Services who met Plaintiff

3

at the hospital and dealt with him throughout his stay (Ernest Cambridge) and the employees responsible for the maintenance of the accident site (Dennis Miller and Carlos Colebrooke). The key witnesses in California are Plaintiff, Plaintiff's wife who witnessed the accident (Linda Thompson), Plaintiff's business manager (Ralph Goldman), the physicians that treated Plaintiff (Dr. Ramin Modabber and Dr. Stuart Kushner), the therapists that treated Plaintiff (Kashmira Variava, Maria Zecchetto, Robert Forester, and Patti Sogaard), and perhaps a representative of Plaintiff's employer (Warner Bros. Records). The key witnesses that reside in Tennessee are all eye witnesses to the accident (Sam Thompson, Sanford Thompson, and Louis Thompson). The only key witness that resides in Florida is the physician that treated Plaintiff (Dr. Gary Ackerman).

The Court notes that this case will likely involve little documentary evidence. To the extent that such information is needed, it will likely be the documents in the Bahamas regarding maintenance of the accident site, Plaintiff's accident report located in the Bahamas, Plaintiff's financial documents located in California, and Plaintiff's medical records located in the Bahamas, Florida, and California. A viewing of the accident site could only be accomplished in the Bahamas, though the necessity of such a viewing is unlikely.

Plaintiff argues that the Court should consider all of the witnesses and documents in the United States as weighing toward trial in Florida. As stated above, however, the touchstone of a forum non conveniens analysis is convenience. It is as costly and inconvenient for witnesses in California and Tennessee to travel to Florida as it is for them to the Bahamas. Cf. Chierchia v. Treasure Cay Servs., 738 F. Supp. 1386, 1388 (S.D. Fla. 1990) ("to travel to Florida [from New York] to litigate would inconvenience plaintiff, therefore her travel to the Bahamas for that purpose could be no more intrusive"). There are far more witnesses and documents in the Bahamas than

4

there are in Florida. Accordingly, the private interest factors weigh in favor of dismissal of this action in favor of a Bahamian forum.

To an even greater extent, the public interest factors militate in favor of dismissal for forum non conveniens. The parties agree that Bahamian law will govern this action. Moreover, this case, in which a California Plaintiff sues Bahamian entities for negligence based on a slip and fall accident that occurred at a Bahamian hotel, bears little relation to this forum. Cf. Chierchia, 738 F. Supp. at 1388 ("Florida jury would have only nominal interest in protecting New York resident from . . . mishaps . . . which occurred in the Bahamas"). On the other hand, the Bahamas has a very strong interest in this litigation. The tourism industry is vital to the Bahamas, and the Bahamas has an interest in regulating the conduct of the Bahamian Defendants and the duty under Bahamian law that they owe visitors to the Atlantis Resort – the largest resort on the islands.

### IV. Conclusion

The Bahamas is an adequate alternative forum available to address Plaintiff's claims and the private and public interest factors weigh heavily in favor of trial there. Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Motion to Dismiss be, and the same is hereby, GRANTED. This case is DISMISSED for forum non conveniens and CLOSED. Any pending motions are denied as moot.

# EXHIBIT "I"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 98-7451-CIV-JORDAN

DOLORES MORSE                           )
                                        )
          Plaintiff                     )
                                        )
vs.                                     )
                                        )
SUN INTERNATIONAL HOTELS                )
LIMITED, a Bahamian company, SUN        )
INTERNATIONAL BAHAMAS LIMITED,          )
a Bahamian company, PARADISE ISLAND     )
LIMITED, a Bahamian company, WEDGE      )
HOTEL MANAGEMENT (BAHAMAS)              )
LIMITED, a Bahamian company d/b/a The   )
Radisson Grand Hotel, Paradise Island,  )
Bahamas; PARADISE HOTEL                 )
INVESTMENTS, LTD., a Bahamian           )
company and PARADISE GRAND HOTEL,       )
LTD., a Bahamian company, together d/b/a )
PARADISE GRAND HOTEL VENTURE            )
                                        )
          Defendants                    )
                                        )

**CLOSED**

**CIVIL**

**CASE**

ꞏiLED by ___ D.C.

FEB 2 6 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

_____

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Defendants Sun International Hotels Limited, Sun International Bahamas Limited, Paradise Island Limited, and Wedge Hotel Management (Bahamas) Limited (collectively, the "Hotels") move to dismiss this case for lack of personal jurisdiction, or alternatively, for forum non conveniens.[1] Prior to transferring this case to me, Judge Ryskamp denied these motions without prejudice, and these motions are now being reconsidered following oral argument by the parties.[2] For the reasons set forth below, the Hotels' motion to dismiss based on the doctrine of forum non conveniens is GRANTED.

_____

[1] Defendant Wedge Hotel Management (Bahamas) Limited has joined in the motion to dismiss for forum non conveniens. *See* Joinder in Co-Defendants' Motion to Dismiss [D.E. 45] (May 19, 1999).

[2] The Hotels' motion for reconsideration [D.E. 89] is GRANTED. The Hotels' motion to strike the amicus curiae brief filed by the Meier family [D.E. 109] is DENIED.

## I. BACKGROUND

Dolores Morse filed this diversity action claiming that the Hotels' negligence caused her serious bodily injuries. Ms. Morse alleges that she was injured during a recreational water sports activity while on vacation in the Bahamas. While riding on a "banana boat," Ms. Morse was struck by a jet ski, which was driven by a minor with another minor passenger. Ms. Morse has sued the operators of hotel properties located near the site of her injury, claiming that they were negligent in the selection and supervision of the vendors who operated recreational water sports activities on the beach near the hotels. Ms. Morse has not sued the jet ski rental operation (Sea & Ski Ocean Sports), the operator of the banana boat (Splash Watersports Limited), or the two minor females who operated and rode the jet ski, both of whom reside in New Jersey. Nevertheless, Ms. Morse expressly alleges that the jet-ski riders were negligent in their operation of the jet ski, *see* Complaint ¶ 28 [D.E. 1] (Dec. 22, 1998), and First Amended Complaint ¶ 32 [D.E. 82] (Sept. 28, 1999), and that both of the watersports vendors, acting as agents of the Hotels, were also negligent. *See* Complaint ¶¶ 34, 40, 45, 51; First Amended Complaint ¶¶ 38, 44, 49, 55, 60.

Ms. Morse's first complaint sought damages from four Bahamian entities, including Sun International Hotels Limited, Sun International Bahamas Limited, Paradise Island Limited, and Wedge Hotel Management (Bahamas) Limited. Briefly, Sun International Hotels Limited is the parent company of Sun International Bahamas, Limited. In turn, Sun International Bahamas Limited is the parent company of both Paradise Island Limited and Island Hotel Company. Sun International Hotels Limited, through its subsidiaries, owns and operates the Atlantis Hotel.[3] Wedge Hotel Management (Bahamas) Limited operates the Radisson Grand Hotel.

Subsequent to Judge Ryskamp's denial without prejudice of the motions to dismiss, Ms. Morse filed an amended complaint adding as defendants Paradise Hotel Investments, Ltd., and Paradise Grand Hotel, Ltd., which together do business as Paradise Grand Hotel Venture. These two defendants filed an answer to the amended complaint, as did Wedge Hotel Management.   I

---

[3] The Sun defendants argue that Ms. Morse has sued the wrong party, claiming that Island Hotel Company is the entity that operates, manages, and controls the Atlantis property. *See* Motion to Dismiss at 18 [D.E. 32] (April 16, 1999). Paradise Island Limited is the entity that owns most of the land surrounding the Atlantis. *See id.* Finally, the Sun defendants argue that Sun International Hotels Limited and Sun International Bahamas Limited are mere holding companies, and hence should be dismissed. *See id.* In light of my ruling, it is unnecessary to address these arguments.

subsequently permitted these answering defendants to withdraw their answers pending resolution of the motions directed at the first amended complaint. *See* Order Permitting Withdrawal of Answers [D.E. 93] (March 3, 2000).

## II. THE DOCTRINE OF FORUM NON CONVENIENS

The doctrine of forum non conveniens permits a district court to decline to exercise jurisdiction when it appears that the convenience of the parties and the interests of justice weigh in favor of trying the action in an alternative forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1947); *Sibaja v. Dow Chemical Co.*, 757 F.2d 1215, 1218 (11th Cir. 1985) (per curiam). In passing on a motion to dismiss for forum non conveniens, a court must conduct a two-part analysis. First, the court must determine whether an adequate and available alternative forum exists. *See Sibaja*, 757 F.2d at 1218. Second, the court must weigh the private and public interests in litigating the case in the alternative forum. *See id.* In conducting this analysis, the Supreme Court has noted that a plaintiff's choice of forum "should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Furthermore, it is important to recognize that Ms. Morse is a United States citizen, and hence her choice of forum deserves more deference than if she was a foreign national. *See Piper*, 454 U.S. at 256 n.23 ("Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."). Yet, the mere fact that the plaintiff is a United States citizen does not, in and of itself, conclusively establish the convenience of a United States forum. *See Iragorri v. International Elevator, Inc.*, 203 F.3d 8, 17-8 (1st Cir. 2000); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000); *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983). *See also American Dredging Co. v. Miller*, 510 U.S. 443, 455 (1994) ("The discretionary nature of the doctrine, combined with the multifariousness of the factors relevant to its application . . . make uniformity and predictability of outcome almost impossible.").

3

## A. AVAILABILITY AND ADEQUACY OF ALTERNATIVE FORUM

"Generally, a defendant satisfies the first prong of the [forum non conveniens] analysis by showing that it is 'amenable to process in the other jurisdiction.'" *Republic of Panama v. BCCI Holdings, Inc.,* 119 F.3d 935, 951 (11th Cir. 1997) (citing *Piper Aircraft,* 454 U.S. at 254 n.22). In this case, all of the defendants are Bahamian corporations, and are thus amenable to process in the Bahamas. Bahamian law recognizes actions based on common law negligence and vicarious liability. *See* Affidavit of Ferron J.M. Bethell, Esq. ¶ 2 [D.E. 31] (April 16, 1999). It is true, as Ms. Morse points out, that the Bahamas does not allow contingency fee arrangements and a jury trial will likely not be available. *See* Affidavit of Reginald H. Lobosky ¶¶ 8, 16 [D.E. 67] (July 23, 1999). But these considerations do not render the Bahamas an inadequate or unavailable alternative forum. *See Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1430 (11th Cir. 1996) (holding that the unavailability of a jury trial and the lack of a contingency fee system are not determinative in the forum non conveniens analysis); *Coakes v. Arabian American Oil Company,* 831 F.2d 572, 576 (5th Cir. 1987) (holding that the fact that the alternative forum does not permit contingency fee arrangements "is not a factor that controls or even significantly influences the forum non conveniens determination"). *See also Resorts International, Inc. v. Spinola,* 705 So.2d 629, 630 (Fla. 3d DCA 1998) (holding that the unavailability of a jury trial in the Bahamas did not make it an inadequate forum). *Cf. Piper Aircraft,* 454 U.S. at 247 (holding that the "possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry").

If an alternative forum exists which is both available and adequate, then a court must look to the private and public interests in determining whether the balance of conveniences strongly favors dismissal. Because the focal point of the forum non conveniens inquiry is convenience, "controlling weight cannot be given to any one factor in the balancing process or the doctrine would lose much of the flexibility that it its essence." *Doe v. Sun International Hotels, Ltd.,* 20 F. Supp.2d 1328, 1300 (S.D. Fla. 1998). If the balance of conveniences weighs strongly in favor of dismissal, the court must then "ensure that the plaintiffs can reinstate their suit in the alternative forum without undue inconvenience, or prejudice." *Id.*

4

### B. THE PRIVATE INTEREST FACTORS

In weighing the private interests of the case, a court should look to several factors, including the "relative ease of access to sources of proof; ability to obtain witnesses; possibility of view of the premises; and 'all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" *C.A. La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (citation omitted). These factors are discussed below.

The accident occurred in the Bahamas. The Hotels argue that the majority of witnesses reside in the Bahamas, and hence a trial there would be more convenient. In this regard, the availability of compulsory process is a relevant consideration. *See Iragorri*, 203 F.3d at 17 ("[T]he live testimony of [key] witnesses for the purposes of presenting demeanor evidence [is] essential to a fair trial. Indeed, on one occasion we approved a determination that because a particular witness's 'credibility would be pivotal to any judicial resolution of the parties' dispute . . . deposition testimony and letters rogatory, even if available to the American court, would be less than satisfactory substitutes for in-person testimony.'"). The Hotels have submitted a list of twelve witnesses who are located in the Bahamas, including employees of the Atlantis, employees of the Radisson, the watersports vendors, beach vendors, emergency medical treatment personnel, and other witnesses. *See* Motion to Dismiss at 8 [D.E. 32] (April 16, 1999); Affidavit of J. Barrie Farrington ¶ 16 [D.E. 31] (April 16, 1999). In response, Ms. Morse correctly argues that courts should look to the quality of the proposed witnesses rather than their number. *See Gates Learjet Corporation v. Jensen*, 743 F.2d 1325, 1334 (9th Cir. 1984). She notes that the two persons with the best vantage point of the accident – herself and her son – reside in Florida. She further argues that a number of the witnesses are in the employ of the Hotels, and compulsory process will not be necessary to produce those employees in Florida. *See e.g., Doe*, 20 F. Supp.2d at 1330 ("Witnesses for the plaintiff have all agreed to come to Florida and key defense witnesses are employees of the defendant who are within the defendant's control."). However, Ms. Morse ignores the fact that many key witnesses are not within the employ of the Hotels, and hence would be outside the compulsory process of the court. Indeed, a cursory review of Ms. Morse's own witness list reveals that she too has listed many of these individuals as witnesses. *See* Plaintiff's Rule 16.1 Witness List [D.E. 19] (April 5, 1999). For example, Ms. Morse has listed as witnesses a number of individuals from Sea & Ski and Splash Watersports. Furthermore, Ms. Morse has listed as witnesses police investigators

and other non-employee witnesses, all who would also be outside the compulsory process of this court. *See Smith v. Chason*, 1997 WL 298254, at *9 (D. Mass. April 10, 1997) (noting that Bahamian police investigators can be compelled to testify in the Bahamas). Finally, it is important to note that Ms. Morse could exert personal jurisdiction in the Bahamas over the driver of the jet ski, based on the fact that the alleged tort occurred in the Bahamas. *See* Bethell Aff. ¶ 3. Other than Ms. Morse, her son, and his girlfriend, the vast majority of key witnesses are in the Bahamas. Indeed, of the five medical witnesses on Ms. Morse's witness list, three of them are records custodians, and hence could not testify as to damages or liability. Although Ms. Morse's treating physician and rehabilitative physician are in Florida, the initial treating physician is in the Bahamas. In large measure, the physicians would speak to the issue of damages, and not liability. *Cf. Iragorri*, 203 F.3d at 17 ("[T]he availability of expert witnesses may not be as significant as the availability of fact witnesses."); *Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv*, 711 F.2d 1231, 1240 n.26 (5th Cir. 1983) ("In considering the convenience of obtaining testimony, we recognize that the availability of compulsory process is of less value in the case of expert witnesses than in the case of disinterested eyewitnesses."). As to the non-party witnesses residing in New Jersey, the inconvenience of a trial in the Bahamas is substantially the same as the inconvenience of a trial in Miami. *See Wiwa*, 226 F.3d at 107 ("For any non-party witness, the inconvenience of a trial in New York is not significantly more pronounced that the inconvenience of a trial in England."). *Cf. Chierchia v. Treasure Cay Services*, 738 F. Supp. 1386, 1388 (S.D. Fla. 1990) ("But to travel to Florida [from New York] to litigate would inconvenience plaintiff, therefore her travel to the Bahamas for that purpose could be no more intrusive.").

With regard to the accessibility of documentary evidence, Ms. Morse states that she has in her possession all of her medical records, including those from the Bahamian hospital, that she has the police reports and the witness statements, including those of the Atlantis personnel, and that all of her employment and income tax records are in Florida. *See* Response to Motion to Dismiss at 15 [D.E. 63] (Aug. 23, 1999). Further, Ms. Morse argues that the employee personnel records, contracts with vendors, security reports, time logs, etc., are all within the Hotels' control. *See id.* at 15. As to Ms. Morse's argument that the Hotels have failed to point out exactly what documentation they would not be able to obtain without compulsory process, the Supreme Court has noted that "such detail is not necessary." *Piper Aircraft*, 454 U.S. at 258. The Hotels have "moved to dismiss

6

precisely because many crucial witnesses [and documents] are located beyond the reach of compulsory process, and thus are difficult to identify or interview." *Id.* at 258. Significantly, because Ms. Morse has alleged the direct (or primary) negligence of Sea & Ski and Splash Watersports, access to the documentary evidence (i.e., policies, prior accident reports, safety violations, etc.) in the hands of those entities is extremely important to mounting a defense. The Sun defendants have submitted evidence that they do not own, operate, or control Splash Watersports Limited or Sea & Ski Ocean Sports, and that neither entity is allowed to solicit or operate on the grounds of Atlantis. *See* Affidavit of Giselle Pyfrom ¶¶ 17, 18 [D.E. 31] (April 16, 1999); Affidavit of Gene Albury ¶¶ 17, 18 [D.E. 31] (April 16, 1999); Farrington Aff. ¶¶ 19, 23. Furthermore, the Sun defendants have submitted evidence that another entity named Splash Limited exists, but that it is not owned, operated, or controlled by them. *See* Pyfrom Aff. ¶ 16; Albury Aff. ¶ 16; Farrington Aff. ¶ 22. This entity performs services around the pool decks of the Atlantis, but does not conduct any watersports activities involving banana boats or jet-skis. *See* Farrington Aff. ¶ 22. Wedge Hotel Management has similarly provided evidence that the concessionaires are prohibited from soliciting watersports customers on the premises of the Radisson. *See* Reply to Motion to Dismiss at 2 [D.E. 73] (Sept. 13, 1999).

Another factor to take into consideration is the ability to implead other entities. *See Piper Aircraft*, 454 U.S. 267-68 (discussing the ability to implead as a forum non conveniens factor). The Hotels argue that they would not be able to implead Sea & Ski, Splash Watersports, or the jet-ski driver if the case were tried in Florida. Indeed, although this case involves the alleged direct negligence of these actors, Ms. Morse has not named them as defendants, presumably because of lack of personal jurisdiction. Because these entities were directly involved in the underlying controversy, the inability to implead them weighs in favor of dismissal. Ms. Morse's allegations are predicated in large part on the fact that Sea & Ski and Splash Watersports – acting as agents of the Hotels – were negligent. If the Hotels could show that the accident occurred solely as a result of the negligence of the watersports vendors, then they could be relieved of liability. *See id.* at 259. Likewise, if it could be shown that the agents were not negligent, then *a fortiori*, the Hotels would most likely not be negligent either. *See* RESTATEMENT (SECOND) OF TORTS § 883 (1977); RESTATEMENT (SECOND) OF AGENCY § 217B (1958). Litigating all claims in the Bahamas avoids a scenario in which the Hotels would pursue their cross-claims against Sea & Ski and Splash

Watersports in the Bahamas while defending the action against Ms. Morse in the United States, without compulsory process to obtain key witnesses. Although the Hotels, if found liable in this court, may seek contribution from Sea & Ski and Splash Watersports in the Bahamas, such an approach runs the risk of inconsistent verdicts. *See Piper Aircraft Co.*, 454 U.S. at 243. Because judicial economy favors resolution of all claims in one trial, the plaintiff's chosen forum would be unduly burdensome and dismissal is warranted. *See id.* at 259 (strong possibility that impleaded party would completely indemnify or contribute a large portion of damage award); *Iragorri*, 203 F.3d at 15 (inability to implead favors dismissal); *Fitzgerald v. Texaco*, 521 F.2d 448, 453 (2d Cir. 1975) (parties that the defendant wished to implead were "directly involved in the controversy"); *Kristoff v. Otis Elevator Co.*, 1997 WL 67797, at *3 (E.D. Pa. Feb. 14, 1997) (dismissing Pennsylvania resident's action against Bahamian company based in part on the inability to implead third parties); *Kilvert v. Tambrands, Inc.*, 906 F. Supp. 790, 796 (S.D.N.Y. 1995) ("A defendant's inability to implead other direct tortfeasors has been held to constitute 'clear prejudice' and thus to point strongly in favor of dismissal."); *American Home Assurance Co. v. Insurance Corp. of Ireland*, 603 F. Supp. 636, 641 n.5 (S.D.N.Y. 1984) ("Though not dispositive, courts give such third party direct involvement considerable weight. Tort actions have been dismissed where a third party might bear responsibility for an accident and a full factual hearing required the presence of all parties. As noted, however, the citizenship of the plaintiff weighs heavily in the balance."). *But cf. Reid-Walen v. Hansen*, 933 F.2d 1390, 1398 (8th Cir. 1991) (reversing forum non conveniens dismissal in personal injury action brought by Minnesota plaintiff against Missouri defendants who owned and operated facilities in Jamaica, despite inability to implead because the putative cross-claims were "independent" from the underlying claim).

Next, the Hotels argue that a Bahamas forum would permit a viewing of the premises. Ms. Morse responds by noting that she already has pictures and videos of the vicinity, and hence a viewing would be unnecessary. *See Reid-Walen*, 933 F.2d at 1398. Nevertheless, a premises view remains a relevant consideration, particularly in light of the fact that Hotels' claim the watersports vendors are prohibited from soliciting on their properties. *See Iragorri*, 203 F.3d at 15; *Reid-Walen*, 933 F.2d at 1406 (Timbers, J., dissenting) (noting that a view of the premises would be appropriate where the issue involves safety considerations in the swimming areas around beach hotels).

Ms. Morse's most compelling argument is that she would not be able to maintain a suit in the Bahamas because of its prohibition against contingent fee arrangements. *See* Affidavit of Ms. Morse [D.E. 63, Exh. 29] (August 6, 1998). *See also Resorts International*, 705 So.2d at 630 (noting that this factor is more related to the private interests rather than the adequacy of the alternative fora). A number of cases have held that the absence of a contingent fee system should be taken into account in considering the practical problems for the plaintiff. *See, e.g., Reid-Walen*, 933 F.2d at 1399; *Lugones v. Sandals Resorts, Inc.*, 875 F. Supp. 821, 824 (S.D. Fla. 1995). However, one of the Eleventh Circuit's most recent expositions on the doctrine of forum non conveniens states that the lack of a contingent fee system and the lack of a trial by jury are not entitled to substantial weight. *See Magnin*, 91 F.3d at 1430. The Eleventh Circuit explained:

> As cherished as trial by jury is in our law, and as cherished as contingency fee arrangements have become to some plaintiffs and their attorneys, [the plaintiff] has not cited to us any Supreme Court or court of appeals decision giving such considerations substantial weight in forum non conveniens analysis. The argument is particularly weak in regard to contingency fees. In *Coakes v. Arabian American Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987), the Fifth Circuit held that the ban against contingency fees in England should not significantly influence the forum non conveniens determination, and observed that, '[i]f the lack of a contingent fee system system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most forums.' The same is pretty much true of trial by jury. As the Supreme Court noted in *Piper Aircraft Co.*, 454 U.S. at 252 n.18, 102 S. Ct. at 264 n.18, 'jury trials are almost always available in the United States, while they are never provided in civil law jurisdictions,' and '[e]ven in the United Kingdom, most civil actions are not tried by a jury.' Yet, there are numerous decisions dismissing cases in favor of the United Kingdom as a forum.

*Id.* at 1430.

The availability of the contingent fee, moreover, is not wholly ensconced in the American legal psyche. Even in the United States, the contingent fee arrangement is prohibited in certain types of cases. For example, contingent fees are prohibited in criminal defense cases, domestic relations cases, and in some states, in the context of lobbying activities. *See* CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 9.4.1 (1986). Nevertheless, the point in *Magnin* is well taken because most of the world's legal systems prohibit the charging of contingent fees. *See id.*

Finally, this case does not implicate any special circumstances which counsel against dismissal. There are no compelling reasons preventing Ms. Morse's return to the Bahamas. *See,*

9

*e.g.*, *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000) (reversing forum non conveniens dismissal in a wrongful death and personal injury case brought by widows of two businessmen and third businessman against American corporate hotel manager, resulting from an incident in which a religious extremist went on a shooting spree in the defendant's Egyptian hotel); *Doe*, 20 F. Supp.2d at 1329-30 (denying motion to dismiss for forum non conveniens in a case involving an eighteen year old girl who was raped while on vacation at the defendant's resort in the Bahamas, and sued the hotel for failure to provide safe premises).

In viewing the totality of the private interests, with due consideration to Ms. Morse's choice of forum, I find that the balance of conveniences strongly favors dismissal. Although the balance of private interests are not in equipose, I proceed to an analysis of the public interest factors. *See Pain v. United Technologies Corp.*, 637 F.2d 775, 792 (D.C. Cir. 1980) ("[E]ven when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute, or that foreign law will predominate if jurisdiction is retained.").

## C. THE PUBLIC INTEREST FACTORS

The public interest factors include "court congestion and jury duty generated by controversies having no relation to the forum; the desirability of having localized controversies decided at home; and the difficulties attendant resolving conflict-of-laws problems and applying foreign law." *C.A. La Seguridad*, 707 F.2d at 1307. I am convinced that these factors also weigh in favor of dismissal.

First, although the Southern District of Florida has one of the busiest dockets in the United States, this factor has been properly accorded little or no weight in the analysis. *But cf. Sibaja*, 757 F.2d at 1218 n.5 ("[T]his case is essentially fifty eight different lawsuits with different elements of damages, negligence, contributor negligence, etc. It could not help but congest this Court's docket more than it would that of a Court at the situs of the injury simply because of the logistics of dealing with fifty eight different Plaintiffs at this distance."). However, given the nature of the case – a Florida plaintiff suing Bahamian hotels for negligence based on an accident caused by the direct negligence of a New Jersey minor and two other Bahamian entities which are not named defendants – the dispute bears little relation to this forum. *See Kristoff*, 1997 WL 67797, at *4 ("The slight

10

connection of the Eastern District of Pennsylvania to this action is outweighed by the efficiency of having a Bahamian court applying local law to the liabilities associated with an accident involving a Bahamian elevator.").

Second, it is undisputed that Bahamian law would apply. This factor also generally weighs in favor of dismissal. *See Piper Aircraft Co.*, 454 U.S. 260 n.29 (noting that many forum non conveniens cases hold that the need to apply foreign law favors dismissal). Bahamian law would need to be determined, *see* FED. R. CIV. P. 44.1, and a Florida jury would have to apply it. However, the impact of this factor is mitigated by the fact that federal courts are often called upon to apply foreign law, *see Lugones*, 875 F. Supp. at 824, and that Bahamian law is derived from English common law. *See* Affidavit of Reginald Lobosky ¶ 4 [D.E. 67] (July 28, 1999). Nevertheless, the factor still weighs in favor of dismissal.

Finally, the Bahamas has a very strong interest in this litigation. The regulation of watersports safety is vital to the Bahamian tourist industry. *See Piper Aircraft*, 454 U.S. at 260 ("[T]here is 'a local interest in having localized controversies decided at home.'"). The focal point of the case – the extent of duty that Bahamian hotels owe to third parties for the acts of Bahamian watersports vendors in the vicinity or on their property – implicates inherently localized considerations. Of course, Florida does have an interest in this litigation because it involves a resident plaintiff, and because approximately 14% of Atlantis' business is derived from Florida. *See Lugones*, 875 F. Supp. at 825. That interest, however, is insufficient to favor retention of this case.

## III. CONCLUSION

Upon weighing the relevant considerations, including the proper deference accorded to an American plaintiff, I believe that balance of conveniences weighs heavily in favor of dismissal. Forcing the Hotels to litigate this case without the alleged culpable parties would operate a manifest injustice. *See C.A. La Seguridad*, 707 F.2d at 1308 n.7. *See e.g., Iragorri*, 203 F.3d at 17-8 (affirming forum non conveniens dismissal of a wrongful death action brought by a widow of a Florida domiciliary against an American company doing business in Colombia, for an accident which occurred in Colombia); *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 290-91 (5th Cir. 1989) (affirming forum non conveniens dismissal of wrongful discharge action brought by a Texas pilot against a Saudi Arabian airline based on a wrongful termination of an employment

11

contract executed and allegedly breached in Saudi Arabia); *Cheng*, 708 F.2d at 1410-12 (affirming forum non conveniens dismissal of claims arising out of airplane crash in Taiwan, despite the fact that several plaintiffs were American citizens); *Pain*, 637 F.2d at 795-99 (affirming forum non conveniens dismissal of consolidated wrongful death actions resulting from helicopter crash in Norway despite the presence of an American plaintiff); *Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 165, 166 (2d Cir. 1979) (affirming forum non conveniens dismissal of admiralty action brought by New York corporation against Liberian vessel for damages sustained out of the defendant's collision with the plaintiff's pier in Trindad); *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975, 977-78 (9th Cir. 1977) (affirming forum non conveniens dismissal of action brought by Arizona corporation against a Delaware corporation (headquartered in Missouri) in Arizona, where all of the events underlying the cause of action took place in Mexico); *Kristoff*, 1997 WL 67797, at *3 (dismissing Pennsylvania resident's action against Bahamian company on the basis of forum non conveniens); *Chierchia*, 738 F. Supp. at 1388-90 (dismissing New York plaintiff's personal injury claim for injuries she incurred in a boating accident in the Bahamas). *Cf. Transunion Corp. v PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987) (affirming forum non conveniens dismissal of fraud case brought by Philippines corporation against a New York corporation, even though the alleged fraudulent misrepresentations took place during negotiations in New York, and that some witnesses and documents were in New York); *Schertenleib v. Traum*, 589 F.2d 1156, 1164-66 (2d Cir. 1978) (affirming forum non conveniens dismissal of abuse of process action brought by foreign plaintiff against New York attorney for actions which occurred in Switzerland, even though Swiss court may decline to exercise jurisdiction).

The Hotels' motion to dismiss for forum non conveniens [D.E. 32] is therefore GRANTED, subject to the following conditions. First, the Hotels shall waive in writing any and all defenses pertaining to statutes of limitation, jurisdiction, and venue that they may have in a Bahamas court. Second, the Hotels shall waive any entitlement to costs and attorney's fees under Bahamian law should they be the prevailing party, and shall waive their right to request that Ms. Morse post bond or security to cover the same. Third, the Hotels shall stipulate to the authenticity and admission of Ms. Morse's Florida medical records. Finally, the Hotels shall consent to the enforcement in the United States of any final judgment entered in the Bahamas. The Hotels shall file written

12

stipulations agreeing to these conditions by March 9, 2001, or the case will be reopened. For now, this matter is CLOSED and all other pending motions are DENIED AS MOOT.

DONE and ORDERED in chambers in Miami, Florida, this 26th day of February, 2001.

Adalberto Jordan
United States District Judge

Copy to:     Robert L. Parks, Esq. and Jeannette Lewis Bologna, Esq.
             R. Layton Mank, Esq.
             Keith Olin, Esq.

13

# EXHIBIT "J"

# FILED

AUG - 1 2002

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

RICHARD H. DANGLER, JR.,

        Plaintiff,

   v.

ATLANTIS RESORT & CASINO, et al.,

        Defendants.

NO. CIV. S-01-1228 WBS DAD

MEMORANDUM AND ORDER

----ooOoo----

    This diversity suit arises out of plaintiff Richard Dangler's alleged slip and fall at defendants' resort hotel in the Bahamas.  Defendant Sun International Hotels Ltd. ("SIHL") now moves to dismiss on the grounds of forum non-conveniens, improper venue, and lack of personal jurisdiction.  Plaintiff opposes this motion despite an earlier statement by plaintiff's counsel that "jurisdiction is so tenuous" that he could "just barely" avoid violating Rule 11 by arguing that this action should remain in this district.  (Pl's Ex Parte Application for

1

1   Order Transferring Case to Southern District of Florida).[1]

2   I.   Factual and Procedural Background

3           Plaintiff sues numerous defendants for an alleged slip

4   and fall accident that occurred at the Atlantis Hotel Resort and

5   Casino in the Bahamas.  The Atlantis Hotel Resort and Casino, one

6   of the named defendants, is owned and operated by the Island

7   Hotel Company, Paradise Island, Ltd., and Sun Bahamas, which are

8   also named as defendants. (Pyfrom Decl. ¶ 3.)  The Island Hotel

9   Company, Paradise Island, Ltd., and Sun Bahamas are indirectly or

10  wholly owned subsidiaries of the moving party, defendant SIHL.

11  SIHL and its subsidiaries are all incorporated and have their

12  primary place of business in the Bahamas.  (Pyfrom Decl. ¶¶ 3,

13  4.)[2]

14  II.  Forum Non Conveniens

15          Although plaintiff opposed SIHL's motion to the extent

16  it was premised on lack of personal jurisdiction and the forum

17  selection clause, plaintiff's brief failed to address SIHL's

18  argument that the claims against it should be dismissed under the

19  doctrine of forum non-conveniens.  For the reasons discussed

20  below, the court finds that dismissal on the grounds of forum non

21

22          [1]   Pursuant to Local Rule 78-230, plaintiff is not
    entitled to be heard in opposition to SIHL's motion at oral
23  argument because he did not timely file a written opposition.
    Accordingly, the court finds this case suitable for decision
24  without oral argument.

25          [2]   Plaintiff's complaint also names the Loews Corporation,
    Loews Hotels & Resorts, Loews Entertainment, Trump Enterprises,
26  Trump Hotel & Casino Resorts, and Donald Trump as defendants.
    Plaintiff has voluntarily dismissed these defendants from the
27  case.  (See Pl's Status Report, June 3, 2002.)  It appears that
    the remaining defendants are all incorporated and have their
28  principal place of business in the Bahamas.

2

1  conveniens is appropriate.  Accordingly, the court does not

2  address the other grounds for dismissal advanced by SIHL.

3         Dismissal for forum non-conveniens is appropriate if

4  (1) there exists an adequate, alternative forum in which to

5  litigate the controversy; and (2) the balance of all relevant

6  public and private factors favors dismissal.  Piper Aircraft Co.

7  v. Reyno, 454 U.S. 235, 254 n. 22, 257 (1981); Gulf Oil Co. v.

8  Gilbert, 330 U.S. 501, 506-08 (1947).

9     A.  Adequate Alternative Forum

10        Courts have repeatedly found that the Bahamas is an

11  adequate alternative forum for trying a personal injury case such

12  as the one at issue here.  See Morse v. Sun Int'l Bahamas, Ltd.,

13  Case No. 98-7451-CIV-Jordan (S.D. Fla. Feb. 26, 2001) aff'd

14  without opinion by 277 F.3d 1379 (11th Cir. 2001); Sun Trust Bank

15  v. Sun Int'l Hotels, Ltd., 184 F. Supp. 2d 1246 (S.D. Fla. 2001).

16  The Bahamian legal system is patterned after the English system,

17  allows access to evidence and witnesses, and supports the

18  enforcement of judgments.  (Pyfrom Decl. ¶ 19.)  Accordingly, the

19  Bahamas is an adequate alternative forum in which to hear this

20  case.

21     B.  Balance of Private and Public Interest Factors

22        Defendants must also show that they will suffer

23  "oppressiveness and vexation . . . out of all proportion to

24  plaintiff's convenience" by having to try the case in the Eastern

25  District of California, or that "considerations affecting the

26  court's own administrative and legal problems" make this forum

27  inappropriate.  American Dredging Co. v. Miller, 510 U.S. 443

28  (1994)(quoting Piper Aircraft, 454 U.S. at 241); Ravelo Monegro

3

1  v. Rosa, 211 F.3d 509-413-14 (9th Cir. 2000).

2         1.  Private Interest Factors

3         Private interest factors relevant to this analysis

4  include the relative ease of access to sources of proof,

5  availability of compulsory process for attendance of unwilling

6  witnesses, the cost of obtaining such witnesses, the possibility

7  of a view of premises, and "all other practical problems that

8  make trial of a case easy, expeditious, and inexpensive." Gulf

9  Oil Co., 330 U.S. at 508.

10        The Bahamas is the site of plaintiff's alleged

11 accident, and many of the relevant witnesses are located in the

12 Bahamas, including: (1) the medical staff who examined the

13 plaintiff after the alleged incident; (2) two resort employees

14 who, according to plaintiff's complaint, aggravated his injuries

15 by moving him after his fall and made damaging statements; (3)

16 and hotel employees and independent contractors involved in the

17 maintenance and construction of the area of the alleged incident.

18 (Pyfrom Decl. ¶ 17.)  Other than plaintiff, who resides in

19 California, the court is aware of no other witnesses outside of

20 the Bahamas who would have relevant testimony to offer.

21        Any documentary evidence involving the site of the

22 alleged incident, or the management, operation, control and

23 maintenance of the site is also in the Bahamas. (Id.)  Although

24 it is unlikely that a viewing of the premises in question will be

25 necessary, this could be best accomplished in the Bahamas.  Thus,

26 it appears that the great majority of the relevant evidence is

27 located in the Bahamas.  Plaintiff has not suggested otherwise.

28        In addition, there is no indication that it would be a

4

1  hardship for plaintiff to litigate this case in the Bahamas.   In

2  fact, earlier in this litigation, plaintiff filed an ex parte

3  application to transfer this case to the Southern District of

4  Florida, which is much closer to the Bahamas than the Eastern

5  District of California.  (See Pl's Ex Parte Application for Order

6  Transferring Case to Southern District of Florida).  Although the

7  plaintiff's choice of forum is ordinarily accorded some

8  deference, in this case the plaintiff has requested by his own

9  motion that the case be transferred to a different forum.

10  Accordingly, the private interest factors weigh in favor of

11  dismissal.

12           2.  Public Interest Factors

13           The court must also consider public interest factors,

14  including docket congestion, costs to the community in the

15  present forum in terms of judicial resources and jury duty, the

16  interest in litigating localized controversies locally, and the

17  interest in having the dispute adjudicated in the location whose

18  law governs the dispute.  Gulf Oil Co., 330 U.S. at 508.

19  Bahamian law may apply to this controversy.  Moreover, the events

20  giving rise to this action occurred at SIHL's resort in the

21  Bahamas, and the Bahamas has a strong interest in litigating

22  controversies involving the tourism – one of its major

23  industries.  California's interest in litigating this case is de

24  minimis, by contrast. See Morse, Case No. 98-7451-CIV-Jordan

25  (finding that the Bahamas had a greater interest than Florida in

26  litigating the personal injury claim of a Florida citizen,

27  because the case involved questions vital to the Bahamian tourist

28  industry); Kristoff v. Otis Elevator Co., 1997 WL 67797 No. Civ.

5

1  A 96-4123 (E.D. Pa Feb. 14, 1997)(finding that the Bahamas had a

2  greater interest in assessing the liability of an alleged

3  tortfeasor than Pennsylvania did, even though the plaintiff was a

4  Pennsylvania resident).

5          The fact that the great weight of the relevant evidence

6  is in the Bahamas, coupled with the strong public interest in

7  resolving this controversy in the Bahamas, warrants dismissal of

8  this action for forum non-conveniens.  See Foster v. Sun

9  International Hotels, No. 01-1290 CIV King (S.D. Fla. Feb. 4,

10 2002)(dismissing slip and fall case for forum non-conveniens

11 where there were "far more witnesses and documents in the

12 Bahamas" than in the forum state, Bahamian law would apply, and

13 the Bahamas had a "very strong interest" in regulating the

14 conduct of Bahamian defendants and the duty owed to visitors to

15 an important resort).

16         IT IS THEREFORE ORDERED that SIHL's motion to dismiss

17 be, and the same hereby is, GRANTED.

18 DATED: July 31, 2002

19                          WILLIAM B. SHUBB
                            UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

6

# EXHIBIT "K"

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. 02-008153 CACE (25)

WILLIAM J. SKANDALIARIS and
RAFFAELA SKANDALIARIS, his wife

       Plaintiffs,

vs.

SUN INTERNATIONAL RESORTS, INC., a
Florida corporation, SUN INTERNATIONAL
HOTELS, LIMITED, a Bahamian company;
and SUN INTERNATIONAL BAHAMAS
LIMITED, a Bahamian company,

       Defendants.

_____/

## ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** came before the Court upon Defendants' Motion to Dismiss Plaintiffs'

Complaint for *forum non conveniens*. The Court has considered the motion, the affidavit of

Giselle Pyfrom submitted in support of the motion, argument of counsel and the pertinent

portions of the record.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, William J. Skandaliaris and Raffaela Skandaliaris, purportedly Florida

citizens,[1] have filed a two-count Complaint in this Florida state court alleging negligence and

loss of consortium against two Bahamian companies, Sun International Hotels Limited ("Sun

Hotels") and Sun International Bahamas Limited ("Sun Bahamas") (collectively the "Bahamian

---

[1] Plaintiffs proffer that they are Florida citizens but have not provided affidavits or record evidence regarding same. In fact, Plaintiffs submitted no affidavits in opposition to Defendants' Motion to Dismiss prior to the hearing on November 4, 2003.

Defendants").[2]   The crux of the Complaint is that Mr. Skandaliaris suffered injuries when he slipped and fell in the lobby area of the Atlantis Hotel & Casino ("Atlantis") in the Bahamas.

The current action was filed after the dismissal of actions filed by Plaintiffs in Broward County and Collier County regarding the same underlying issues.  Initially, on or about March 21, 2000, Plaintiffs filed their first Broward County action against Sun International Resorts, Inc ("SIRI"), a Florida corporation affiliated with the Bahamian Defendants, alleging claims for negligence, breach of contract, and loss of consortium.  Plaintiffs amended their complaint three times adding claims for negligent misrepresentation and intentional misrepresentation.  Plaintiffs' Complaint was dismissed on two separate occasions based on their suing the wrong party.  Plaintiffs then filed a Notice of Voluntary Dismissal Without Prejudice of the first Broward County action on March 5, 2001.

Four days later, Plaintiffs filed a four-count complaint in Collier County against SIRI alleging the same causes of action – negligent misrepresentation, breach of contract, and loss of consortium.  Plaintiffs amended their complaint to add a claim for joint venture.  On May 22, 2002, Plaintiffs' Amended Compliant was dismissed with prejudice as to SIRI.  However, before the dismissal of the Collier County action, Plaintiffs, on April 29, 2002, filed this second action in Broward County alleging claims for negligence, joint venture, and loss of consortium against SIRI, Sun Hotels, and Sun Bahamas.  On August 12, 2002, Plaintiffs amended their complaint dropping their claims against SIRI, which had been dismissed with prejudice in Collier County

---

[2]   As set forth more fully below, on or around August 12, 2002, Plaintiffs filed an Amended Complaint naming only Sun International Hotels Limited and Sun International Bahamas Limited as Defendants in this action, and the only parties against whom Plaintiffs have asserted claims.  However, the case style was not amended to reflect the proper parties.  Therefore, while Sun International Resorts, Inc. remains identified as a Defendant in the case style of this action, the only Defendants in this action are Sun International Hotels Limited and Sun International Bahamas Limited.

and dismissing their claim for joint venture. Plaintiffs' current complaint alleges negligence and loss of consortium against Sun Hotels and Sun Bahamas, the Bahamian Defendants.

The Bahamian Defendants moved to dismiss Plaintiffs' Amended Complaint for *forum non conveniens*, improper venue and lack of personal jurisdiction. The Bahamian Defendants also moved to quash service of process on the grounds that attempted service on them by serving the Florida Secretary of State was improper. At the commencement of the hearing, counsel for the Bahamian Defendants advised the Court that they were withdrawing their personal jurisdiction defense. As the Court finds the doctrine of *forum non conveniens* to be dispositive of Defendants' Motion, the Court does not reach the other remaining issues raised by the Bahamian Defendants.

## II. FORUM NON CONVENIENS

Dismissal for *forum non conveniens* is appropriate when: (1) the trial court finds that an adequate alternative forum exists which possesses jurisdiction over the whole case; (2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice; (3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and (4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice. See Kinney Systems, Inc. v. Continental Insurance Co., 674 So. 2d 86, 90 (Fla. 1996). When adopting the federal standard of *forum non conveniens* the Florida Supreme Court stated:

> [W]e are persuaded that the time has come for Florida to adopt the federal doctrine of *forum non conveniens*. The use of Florida courts to police activities even in the remotest parts of the globe is not a purpose for which our judiciary was created. Florida courts exist to judge matters with significant impact upon Florida's interests, especially in light of the fact that the taxpayers of this state pay for the operation of its judiciary. Nothing in our Constitution compels the

taxpayers to spend their money even for the rankest forum shopping by out-of-state interests.

Kinney, 674 So. 2d at 93.

### A.    Adequate Alternative Forum

First, the Court must establish whether an adequate alternative forum exists that possesses jurisdiction over the whole case. Kinney, 674 So. 2d at 90. This requirement will be satisfied when the defendant is amenable to process in the other jurisdiction. Id. In this case, both defendants are Bahamian corporations, and are thus amenable to process in the Bahamas.

Moreover, two Florida federal courts have found that the Bahamas is an adequate alternative forum for trying personal injury actions occurring at the Atlantis Resort. See Morse v. Sun Int'l Bahamas, Ltd., Case No. 98-7451-CIV-Jordan (S. D. Fla. Feb. 26, 2001) aff'd without opinion, 277 F. 3d 1379 (11th Cir. 2001); Sun Trust Bank v. Sun Int'l Hotels, Ltd., 184 F. Supp. 2d 1246 (S.D. Fla. 2001); See also Resorts Int'l, Inc. v. Spinola, 705 So. 2d 629, 630 (Fla. 3d DCA 1998)(holding that the Bahamas was an adequate alternative forum and granting dismissal on *forum non conveniens* grounds in a personal injury action at a Bahamian resort independent from the Atlantis). The Bahamian legal system, which is patterned after the English system, allows access to evidence, relevant sites and witnesses, and supports the enforcement of judgments. (Affidavit of Giselle Pyfrom at ¶ 11). Accordingly, the Bahamas is an adequate alternative forum that possesses jurisdiction over the entire case.

### B.    Private Interest Factors

Second, the Court must consider all relevant private interest factors, weighing in the balance a strong presumption against disturbing plaintiff's initial forum choice. Kinney, 674 So. 2d at 90. The private interest factors include "adequate access to evidence and relevant sites,

adequate access to witnesses, adequate enforcement of judgments, and the practicalities and expenses associated with the litigation." Id. at 91.

The Bahamas is the site of Mr. Skandaliaris' alleged accident, and many of the relevant witnesses are located in the Bahamas including: (1) the hotel nurse who examined Mr. Skandaliaris after the alleged incident; (2) hotel employees involved in the maintenance of the area of the alleged accident; (3) hotel employees who examined the area immediately after the alleged accident; and (4) corporate representatives and employees of those Bahamian companies who own and operate the Atlantis Resort.  (Affidavit of Giselle Pyfrom at ¶ 10).

Any documentary evidence involving the site of the alleged accident or the management, operation, control, and maintenance of the site of the alleged accident is also located in the Bahamas. Id.  Thus, the great majority of the relevant evidence is located in the Bahamas.  In addition, the Bahamas has adequate enforcement of judgments and litigation in the Bahamas is neither less practical nor more expensive than litigation in Florida. Id. at ¶ 11.

Once again, Plaintiffs have not submitted an affidavit or other record evidence in opposition to the Bahamian Defendants' Motion to Dismiss.  At the hearing, Plaintiffs' counsel proffered that Plaintiffs were Florida residents and that there would be some Florida based witnesses and documentary evidence (e.g., medical records).  Even accepting Plaintiffs' proffer, the Court finds that the private interest factors still weigh in favor of the Bahamas.

## C.   Public Interest Factors

If the Court finds the balance of private interest in equipoise or near equipoise, the Court must then determine whether the factors of public interest tip the balance in favor of a trial in another forum. Kinney, 674 So. 2d at 90.  In this case, the Court need not weigh the public interest factors having found that the private interest factors are not at or near equipoise, but

rather favor a Bahamian forum. Even assuming that the private interest factors are in balance, the public interest factors would tip the balance in favor of a Bahamian forum.

When the private interest factors are in balance, "a trial court has discretion to grant *forum non conveniens* dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute, or that foreign law will predominate if jurisdiction is retained." Kinney, 674 So. 2d at 92. The crucial inquiry in a public interest analysis is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources. Id. In this case, Florida has relatively little interest in an action against Bahamian companies for an accident that occurred in the Bahamas. Although the Plaintiffs are Florida residents, they chose to travel to the Bahamas and were injured on Bahamian soil. In Kinney, the Florida Supreme Court recognized that the doctrine of *forum non conveniens* may limit the ability of some persons to take advantage of Florida's judicial system and may interfere with a Florida citizen's constitutional right to access to the Florida courts. Id. The court found that "the right of access will not bar dismissal to the degree that such Florida interests are weak *and* to the degree that remedies are available in convenient alternative fora with better connections to the events complained of." Id. at 93 (emphasis in original). The Court finds that the public interest factors favor dismissal for *forum non conveniens*, notwithstanding Plaintiffs' purported residence in the state of Florida.

The Bahamas has a stronger interest in litigating a case involving the appropriate standards of care and the scope and extent of liability of a major Bahamian resort for a personal injury suffered on Bahamian soil to guests voluntarily visiting the Bahamas. As noted by the Florida Supreme Court in Kinney "the use of Florida courts to police activities even in the

remotest parts of the globe is not a purpose for which our judiciary was created." Kinney, 674 So. 2d at 93. Moreover, Bahamian law will govern this dispute. This factor weighs in favor of dismissal. See Ciba-Geigy Ltd, 691 So. 2d at 1125 (finding that since foreign law will predominate, there is no public interest reason for retaining the case). Accordingly, the Court finds that the public interest factors warrant dismissal of this action for *forum non conveniens*.

## D.   Reinstatement of Suit

Because this Court has found that the balance of interests favor dismissal, the Court must ensure that Plaintiffs can reinstate their suit in the Bahamas without undue inconvenience or prejudice. Kinney, 674 So. 2d at 90. The Court finds that Plaintiffs can reinstate their suit in the Bahamas without undue inconvenience or prejudice. The Defendants have stipulated to the following conditions in Kinney:

> [W]e hold that every motion for forum non conveniens dismissal filed in Florida shall automatically be deemed to include two stipulated conditions: (1) that the moving party stipulates that the action will be treated in the new forum as though it had been filed in that forum on the date it was filed in Florida, with service of process accepted as of that date; and (2) that the plaintiff will lose the benefit of *all* stipulations made by the defendant if it fails to file the action in the new forum within 120 days after the date the Florida dismissal becomes final.

Kinney, 674 So. 2d at 93. This stipulation will ensure that Plaintiffs can reinstate their suit in the Bahamas. See Value Rent-A-Car, Inc. v. Harbert, 720 So. 2d 552 (Fla. 4th DCA 1998)(holding that the fourth Kinney factor is satisfied when the defendant has stipulated that it will not assert a statute of limitations defense). Moreover, it will be neither inconvenient nor prejudicial for Plaintiffs to travel to the Bahamas to pursue their claims. Plaintiffs voluntarily traveled to the Bahamas to stay at the Atlantis Resort and Bahamian law, which governs this dispute, will provide them with an adequate remedy for their alleged injuries.

## III. CONCLUSION

The Bahamas is an adequate alternative forum to address Plaintiffs' tort claims which are premised on a slip and fall that occurred in the Bahamas at the Atlantis.  The private and public interest factors weigh heavily in favor of a trial in the Bahamas, and Plaintiffs can reinstate their suit in the Bahamas without undue inconvenience or prejudice.  Nonetheless, Plaintiffs' counsel has suggested that Plaintiffs may have separate and independent claims against Defendants sounding in fraud based on certain representations concerning the post-hurricane condition of the Atlantis resort that may have been made to Plaintiffs in Florida by Florida-based agents or representatives of the Bahamian Defendants.  Accordingly, Plaintiffs are granted leave to amend their Complaint within five (5) days of the date of this order solely to attempt to assert an independent claim based on alleged fraud or fraudulent misrepresentation that occurred in the state of Florida.  Accordingly, it is hereby,

**ORDERED and ADJUDGED** that Defendants' Motion to Dismiss based on *forum non conveniens* is hereby **GRANTED**.  Plaintiffs shall have five (5) days to amend their Complaint to attempt to assert claims related to the subject stay at the Atlantis based on alleged fraud or fraudulent misrepresentation that occurred in the state of Florida.

**DONE and ORDERED** in Chambers, at Fort Lauderdale, Broward County, Florida this _____ day of _____, 2004

ROBERT A. ROSENBERG
CIRCUIT COURT JUDGE

cc:    Bruce S. Liebman, Esq.
       Adam Trop, Esq.